## The People of the State of Illinois, Plaintiff-Appellee, v. Joseph Jackson, Defendant-Appellant.

### Gen. No. 50,035.

First District, Fourth Division.

April 7, 1966.

Marshall A. Patner, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joel M. Flaum, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

Joseph Jackson, the defendant, was convicted of robbery in a bench trial on June 23, 1964, in the Criminal Division of the Circuit Court of Cook County and sentenced to three to five years in the Illinois State Penitentiary. Clarence Sledge was also indicted in the same proceeding. Jackson waived a jury and his bench trial was heard simultaneously with Sledge's trial by the jury. The appeals to this court by the two defendants were not consolidated and People v. Sledge will be con-

sidered separately, although the witnesses and the evidence are the same in both instances.

Defendant Jackson here contends that he was not proved guilty beyond a reasonable doubt; therefore, it becomes necessary for this court to review the evidence. The State presented three witnesses: Officers Daniel Scanlan and Henry Campbell of the Chicago Police Area Four Task Force Undercover Unit, and Detective William Robbins of the Chicago Police Area Four Robbery Unit. The codefendants, Jackson and Sledge, both testified on their own behalf.

Officer Scanlan testified that on the evening of February 5, 1964, about 8:30 p. m., he was in disguise as a member of the Undercover Unit of the Chicago Police Department; that at that time he was working with about seven other policemen, including Officer Campbell, who was watching him from across the street. Scanlan feigned drunkenness and staggered westward along the 900 block on West Madison Street in Chicago. He had in his right-hand coat pocket $28 which had been given him for this assignment. He also had on his person his service revolver and radio equipment. He testified that he kept his hand in his left-hand coat pocket, where he had his revolver. He said that Jackson, accompanied by Sledge, stopped him and asked if Scanlan would give them money for a drink; when he refused, the two defendants, Jackson and Sledge, stepped back three or four feet, conversed briefly, and that Sledge then said, "All right, get his money"; whereupon the two men pushed Scanlan; Jackson went into Scanlan's pocket and "tore" the $28 out. Scanlan told the court that he was pushed into a five-by-eight store window, that the glass shattered onto the street but not into the store, and that he did not get cut—not even on his hands—nor did his clothes get torn. His "cover men" immediately came to his aid and placed the defendants under arrest. Scanlan said that the area where the complained-of in-

294

cident took place was well lighted, and that there were people on the street who were coming in and out of taverns. He testified that the general method employed by the undercover unit was for one policeman to simulate being drunk by acting sick and staggering down a street, with money hanging out of his pocket; that such work was performed about twice a week in areas where there was a high rate of strong-armed robberies; and that he had undergone no special training for such duty.

On cross-examination Scanlan denied having invited the defendant to have a drink with him or having dropped the money on the ground, or that he had arrested the defendant, Jackson, as he tried to help pick the money up, or that he had punched or kicked the defendants. He testified that he used only as much force as was necessary to effect an arrest; that he had no knowledge of whether or not the defendant, Jackson, was wearing a coat, or if or how such a coat might have become torn; that the police had not inventoried any of the property taken from the defendants. He denied that it was the defendant, Jackson, who had been pushed through the store window, or that the reason Jackson's coat was missing was because it was all torn up. He denied having hit Sledge with his fist. He testified that he had never overheard defendant Sledge say he was not with Jackson; that he, himself, had never said that Sledge was walking apart from Jackson. He denied that Sledge was arrested in connection with this incident because of his looks or because he had a Cook County Jail card in his possession.

Officer Campbell testified that he followed Officer Scanlan for about two blocks on the opposite side of the street; that he, too, was dressed in street clothes; that he saw two men stop Scanlan; that when he observed them grabbing Scanlan he went across the street, and that he then heard the window crash. He stated that when he reached the other side of the street anoth-

er officer had apprehended Sledge, and that he, Campbell, apprehended Jackson and took $28 out of his hand. He said that it was cold on the night in question, but he did not recall how Jackson was dressed or if Jackson wore a coat; that he did not see either of the defendants reach into Scanlan's pocket; that he had not heard what either of the two men had said to Scanlan; that he had not undergone any special training before entering the undercover unit; and that he could not tell the court how many people were around at the time of the incident, although he did recall that the area was well lighted. He told the court that the police searched the defendants but found no weapons; that the police did not inventory the clothes of the defendants upon entry into the police station; that he was not in the police car that took the defendants back to the police station; that he thought he had made out an arrest slip on them; and that the only conversation he had with Jackson was in connection with filling out the arrest slip. He further testified that at the time of arrest the defendants said nothing.

Detective Robbins testified in substance that while the police and the defendants were at the police station immediately after the arrest, he asked Sledge why he had tried to rob Scanlan, and that Sledge replied that he wanted the money in order to purchase more liquor; that Jackson was sitting next to Sledge at that point, and that Jackson nodded his head up and down when he heard Sledge give that answer. Robbins told the court that the arresting officers were sitting about five or ten feet away from the defendants when Sledge made this statement and that they were making out their reports at that time. On cross-examination the witness said that he did not reduce Sledge's statement to writing.

It was stipulated that Jackson was 31 and that Sledge was 36.

Defendant Jackson testified on his own behalf that he was walking home when he saw Scanlan, staggering as if intoxicated, coming towards him; that Scanlan addressed him and suggested that they get a drink, to which he replied, "Well, I have a part of it"; that Scanlan said he had money, reached into his pants pocket and pulled out some bills; that some of the bills fell to the ground; that as the defendant stooped to help pick them up, people from everywhere started hitting him; and that he asked them why they were doing so, and implored them not to hurt him. Jackson told the court that during the scuffling he was pushed up against a window, that the glass shattered and cut his plaid coat to pieces; that the coat was later left somewhere at the police station; that the first time he saw Sledge was during the melee, and as far as Jackson was concerned, Sledge was just another man until Jackson heard one of the police say, "This is one of them, get him." Jackson further testified that at the police station the two defendants were seated in the same room, but that they did not sit next to each other. In the course of his testimony Jackson denied ever having seen Sledge before the time they were arrested; denied that he had heard Sledge tell Detective Robbins that the robbery was committed in order to get money for liquor; and denied that he ever tried to rob Scanlan, or that he had ever nodded his head up and down in response to any incriminating statement made by Sledge. He testified that the police had treated him roughly.

Clarence Sledge also testified as codefendant; his story was as follows: He was walking home when he saw Jackson and Scanlan. Jackson was bent over and Scanlan was holding him. The area was well lighted and there were quite a few people around. Sledge kept walking and was about two steps past Scanlan when the police grabbed him. He denied the police accusation

that he was with Jackson, and a search revealed that Sledge had $15 and a County Jail I. D. card—Sledge had been there on a gambling charge for a few days. Sledge told the court that at first Scanlan said that Sledge was not with Jackson, but when the police found the I. D. card Scanlan said that Sledge and Jackson were together, and the police then took them to the station; that Sledge, Scanlan, and another young officer, who was not in court at the time of the trial, were all together in the back seat of the police car; that the police kept asking Sledge if he had been with Jackson, and he kept replying, "Ask Officer Scanlan, he told you before I wasn't with the guy"; that Scanlan replied that Sledge and Jackson were together, and Scanlan hit Sledge in the mouth. In his testimony Sledge further denied having told the police that he wanted the money for liquor. He denied having been seated next to Jackson at the police station, and he denied having been with Jackson, or having tried to rob Scanlan. On direct examination, in response to a question by his own attorney, he testified that he had been in jail before in another state for larceny from the person; that he had pleaded guilty; that afterwards he was charged with having attempted to break into an automobile, to which charge he pleaded guilty and was again sentenced. During the course of the trial and in the presence of the jury, the Assistant State's Attorney stated:

"... [I]t is hereby stipulated by and between the defendant and through his counsel, and the State's Attorney of Cook County that on December 15th of 1949 said defendant was sentenced to the Michigan State Penitentiary at Jackson, Michigan for the crime larceny from the person and received a sentence of from six months to ten years. It is further stipulated by and between the above named parties that Clarence Sledge was sentenced to the

298

Michigan Penitentiary located at Jackson, Michigan on May 7, 1951 for the crime of attempt [sic] breaking and entering of an auto and received a sentence of 9 months to 2 years."

On cross-examination Sledge told the court that he had been staying with his mother while his broken leg was mending and the cast had been taken off the day of the incident, although there were some bandages still on his leg that day. He insisted he had never seen Jackson before the time of arrest, and that the police had treated him roughly.

In this court the defendant argues that there were inconsistencies and improbabilities in the State's evidence and that the conviction should therefore be reversed. In support of his argument he cites People v. Stevenson, 25 Ill2d 361, 185 NE2d 199, and People v. Dougard, 16 Ill2d 603, 158 NE2d 596. The Dougard case is not applicable inasmuch as the prosecution conceded on appeal that there was no direct evidence to show that the defendant had physically aided the burglar, Larkin, who had pleaded guilty at the trial. In the Stevenson case, which was a bench trial, the Supreme Court held that some of the circumstances of the incident as related by the complaining witness were unbelievable on their face. We therefore conclude that these cases are not pertinent.

■ ■ In the instant case the trial judge heard the witnesses, had the opportunity to observe their demeanor during their testimony, and whatever conflicts there were in the evidence were fully presented for the trial court's consideration. It has never been held that in a criminal trial the trier of fact is required to seek out a series of potential explanations compatible with innocence and elevate them to a status of reasonable doubt. People v. Owens, 23 Ill2d 534, 179 NE2d 630.

299

The trial court held that from all the evidence presented before it the defendant, Jackson, was guilty beyond a reasonable doubt. The judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.