**People of the State of Illinois, Plaintiff-Appellee, v. Willie Charleston, Defendant-Appellant.**

**Gen. No. 52,736.**

First District, First Division.
September 29, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Nunzio Tisci, James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Joel M. Flaum, and James B. Haddad, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a 2-count indictment defendant, Willie Charleston, was charged with the offenses of attempted rape and armed robbery. In a bench trial he was found "guilty as charged in the indictment," and he was sentenced to the penitentiary for a term of two to ten years. On appeal he contends that the essential elements of the two offenses were not established, and that he was not proved guilty beyond a reasonable doubt.

The prosecuting witness was Mrs. Dena Anderson, married for five years and the mother of three children. On October 13, 1966, at 12:30 a. m., she left work, and as she proceeded home she stopped to pick up food from a take-out service. As she walked east on 47th Street she noticed the defendant, whom she recognized, standing outside a liquor store, dressed in a dark hat and a corduroy coat and wearing tinted glasses. As she walked she became aware that she was being followed, and as she looked around she saw defendant coming behind her. She

started to run, but defendant struck her on the neck and knocked her down. She had a ten dollar bill in her hand, which she gave him saying, "here is this money," and he accepted it. He kept saying, "Get your stuff, get your stuff, you're going with me." She was screaming loudly, and defendant "stomped" on her hand. She further said, "So while I was on the ground, his hand and fists went under my dress. And so he said he want me, 'I'm going to have you for a little while.' . . . I was near the curb, he was trying to push me under the car. I kept screaming and he kept telling me to shut up." A man came out of a house, and she heard a shot, and the defendant went down the street. The man fired two more shots. Defendant had a knife and cut her leg and smashed her hand, which caused her to be taken to a hospital for treatment.

At the trial the prosecutrix identified defendant as her assailant and said, "I have seen Mr. Charleston before the morning of October 13th. The number of times I have seen him, well, about five years I have seen him in the neighborhood. When I first observed the defendant on the street, the streetlights was on. I was about ten feet from the nearest streetlight where this incident occurred."

The prosecutrix further testified that for the next few days after the attack she was met by her husband after work. On October 19, 1966, she went to a doctor's office at 47th and Lake Park Avenue with her sister and saw the defendant in front of a cleaning shop at about 3:00 p. m. She looked at him across the street, and "he saw me, and he turned his back, and the other two fellows kept on looking." While she was in the doctor's office she looked out the window and saw the defendant and his companions cross the street and go into a recreation room. She called her husband and the police.

Upon the arrival of the police, defendant was in the recreation room. The prosecutrix pointed defendant out

to a police officer and said, "Yes, this is the fellow that attacked me," and defendant was placed under arrest. She further said that on October 13, 1966, the defendant was wearing a brown corduroy coat, tinted glasses and a dark hat. When he was arrested on the 19th he was wearing a brown corduroy coat, tinted glasses and a dark hat. She did not pay any attention to his trousers.

On cross-examination the prosecutrix said that when she first noticed defendant she recognized him as a friend of her husband, and that she knew his name was Willie Charleston. On the night of the incident she gave the police a description, which included his height, weight, clothing and glasses but not a mustache. She said, "They didn't ask me about no mustache, and I did not look. I didn't tell them he had a mustache and I didn't give any description as to any scars on his face at the time. He did not ever put the knife in my throat, only in the leg." She told the police that she had seen her assailant before and would recognize him if she saw him again. She did not reveal that she knew his name because she was afraid of his seeking revenge, since he had been bold enough to attack her initially. She denied ever being with her husband and the defendant at a social occasion or otherwise.

Police Officer Dammons testified that he fired the shots which caused the assailant to flee. He was visiting a friend to repair a television set after he was off duty at 11:00 p. m. At about 1:30 a. m. he heard a woman scream and saw a man on the street struggling with a woman. Running out the door he shouted, "Police," and fired one warning shot. The assailant began running, and he fired two shots at him. Officer Dammons further said, "I did not ever see this man's face at the time, his back was to me. I noticed his clothing. I noticed his height and build. He had a hat on, which color I couldn't state. He also had a brown coat, similar to a car coat, corduroy. I saw the defendant in police custody on October 19th, 1966 . . .

194

he was of the same height and build as the man I saw running away on October 13th." He identified a brown coat as the coat worn by defendant when he fired shots at him. After he fired the two shots he picked the girl up from the curb, and she was taken to a hospital—"She was bleeding, she was crying, she was hysterical . . . . I know this girl to be Mrs. Dena Anderson." Officer Dammons also testified he heard defendant swearing at the prosecutrix, "something like, 'Shut up, bitch, shut up, bitch,' and something to the extent however, 'I am going take you with me for a little while.' "

Police Officer McMillan testified that pursuant to a radio call on October 19, 1966, he went to 47th and Lake Park Avenue and met Mrs. Dena Anderson, the prosecutrix. At the Kimbark Community Social Club he arrested defendant after the prosecutrix pointed him out by saying, "That's the man." Defendant was wearing a corduroy coat and a pair of brown tinted glasses. Defendant had no weapon on him and denied committing the crime.

Defendant testified he was with certain people on the date in question, accounted for his whereabouts at the time in question, and admitted knowing the prosecutrix and her husband. Two other witnesses placed defendant in their presence during the time in question.

A defense witness, Gerry Marie Evans, testified she had known the prosecutrix since they were children. She was the financee of defendant, and on an occasion in June or July of 1966, the prosecutrix, her husband, the witness and defendant were together in a cocktail lounge and sat at the same table, where they engaged in conversation.

Considered first is defendant's contention that he was not proved guilty beyond a reasonable doubt because (1) it was incredible for the prosecutrix to give the police a description of a man she knew and not give them his name; and (2) it was unbelievable that she could have positively identified her assailant and not recall whether he had a mustache.

Defendant charges that the statement of the prosecutrix that she did not give his name initially because she was frightened was a paltry explanation and unbelievable. If she were indeed frightened, "having him arrested and put into custody would end her fear. The true reason for her failure to tell the police his name was that she did not know who accosted her. It was simply a figment of her imagination." Defendant also contends that it is unbelievable that the prosecutrix, who allegedly could positively identify her assailant, did not recall a mustache.

Defendant also notes that the husband of the prosecutrix did not testify and he could have corroborated his wife's testimony. Defendant contends that the testimony of the prosecutrix is contrary to natural law and to human experience and the kind of testimony that cannot be believed.

Defendant argues that "based on this type of evidence, coupled with the defendant's strong alibi defense, the defendant's cause should be reversed." Defendant's authorities include People v. Roe, 63 Ill App2d 452, 211 NE 2d 552 (1965), where a conviction based on the testimony of a key witness was reversed because of his failure to initially name his assailants, whom he knew. The court held that this failure created a reasonable doubt of guilt. Also, People v. Marshall, 74 Ill App2d 483, 221 NE2d 133 (1966), in which a conviction was reversed because the victim was not sure whether the robber had a mustache at the time of the robbery.

Defendant also cites People v. Reese, 34 Ill2d 77, 213 NE2d 526 (1966), where the issue was whether the defendant was a participant in an attempted robbery. Although he was present in the room at the time of the robbery, it was not clear whether he was a participant or an innocent bystander. There the court said (p 79):

"Oddly, of the three occurrence witnesses, the People called only the doctor, Dale having been called by the

196

defendant. The prosecution was, of course, under no duty to call Dale, the witness who actually fired the shot that wounded defendant, but it causes one to wonder whether the failure to use such a witness, present in open court, was from a reluctance to vouch for his veracity or fear that he could not stand up under cross-examination."

The court further said (p 80):

"We attach great weight to the findings of the trier of fact, including his appraisal of the credibility of witnesses, but they are not conclusive and it is our duty to set a conviction aside where the evidence is so unsatisfactory as to raise a reasonable doubt of a defendant's guilt. . . . In our opinion the totality of the circumstances here leaves a reasonable doubt as to the defendant's guilt and the conviction cannot stand."

 We agree that the failure of a victim to initially name his assailant, where known, and the failure to observe whether the defendant had a mustache are factors to be used by the trier of fact in assessing the credibility of a victim and in the overall appraisement of the circumstances of a case, but we do not agree that they are determinative here. In the instant case the prosecutrix had ample opportunity and lighting to recognize her assailant as being someone she had known for a considerable length of time. She provided the police with a full and accurate description of the defendant and told the officers that she had seen him before and could recognize him again. Precise accuracy in describing facial characteristics is unnecessary where, as here, an identification is positive. The testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though his testimony is contradicted by the accused. People v. Miller, 30 Ill2d 110, 113, 195 NE2d 694 (1964).

We note that in finding defendant guilty the court remarked: "The prosecutrix in this case positively identified the defendant. The testimony of the police officer, although not seeing his face, indicated that he had a similar build. And he did say that the clothes were the same. . . . With regard to the testimony of the defendant and of his witnesses, there were many discrepancies in regard to that evening, and where they were at specific times, and what they were doing. . . . For all these reasons, the Court finds the defendant guilty as charged in the indictment."

■■ Defendant's final contention is that the essential elements of armed robbery and attempt rape were not established here. We do not agree. As to the armed robbery, the record shows that the defendant, armed with a knife, hit the prosecutrix in the neck and knocked her down. In fear, she gave him the money, and he accepted it. Robbery is not a specific intent offense, and it is enough that defendant took the victim's money in the course of a forceful attack. A specific demand for money is not necessary. People v. Nelson, 89 Ill App2d 84, 88, 233 NE2d 64 (1967).

■ The specific intent for attempted rape was proved. The prosecutrix testified, "I was first laying on my stomach when I was first on the ground, and during the time this incident took place I did not stay on my stomach. I was facing upwards and had occasion to look at the face of this man. I was head down when he took the $10 from me. He had some conversation with me and he put his hand under my dress. He said, 'Get your stuff, get your stuff, come with me, I'm going to have you for a little while.'" Also, the attack was seen and the words of the defendant were heard by Officer Dammons. In People v. Hiller, 7 Ill2d 465, 469–70, 131 NE2d 25 (1955), it is said:

"We agree that an indecent assault, however aggravated, will not warrant a conviction of assault with intent to commit rape, without proof of an intention to have intercourse with a woman by force and against her will. . . . But this intention need not be an expressed one, it may be inferred from the acts of the accused and the circumstances of the assault. . . . The mere fact that the accused is frustrated in his purpose . . . or later desists from his purpose, does not relieve him of guilt."

■ In a bench trial in a criminal case, a reviewing court, in view of the opportunities of observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to defendant's guilt. (People v. Woods, 26 Ill2d 582, 585, 187 NE2d 692 (1963).) Applying that test here, we believe that the trial court was presented with satisfactory and plausible proof on which to find defendant guilty beyond a reasonable doubt of both offenses. People v. Lee, 96 Ill App2d 105, 112, 238 NE2d 63 (1968).

■ Although neither side has questioned defendant's sentence, we think the record in this area is somewhat unclear. Defendant was indicted and tried for two separate and distinct offenses, and the finding of the court that he was guilty as charged was equivalent to a finding that he was guilty of both of the offenses, and defendant should have been sentenced for each charge. See People v. Raby, 40 Ill2d 392, 404, 240 NE2d 595 (1968). Therefore, pursuant to powers given to this court by Supreme Court Rule 615, defendant's sentence is modified so as to show that the defendant stands sentenced to the Illinois penitentiary for a term of two to ten years on his conviction of the offense of attempt rape and for a term of two to ten years on his conviction of the offense of armed robbery, both sentences to be served concurrently.

Subject to the foregoing modification, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed as modified.

ADESKO, P. J. and BURMAN, J., concur.