(No. 34851.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PERCY WILLIAM BROWN, Plaintiff in Error.

*Opinion filed May 22, 1959.*

HAROLD I. LEVINE, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, FRANCIS X. RILEY, and EDWIN A. STRUGALA, of counsel,) for the People.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

At a jury trial conducted in the criminal court of Cook County on April 24, 1957, the defendant, Percy William Brown, was convicted of armed robbery and sentenced to the penitentiary for a term of not less than three nor more than eight years. Upon writ of error he now contends (1) that he was not proved guilty beyond a reasonable doubt, (2) that improper reference was made by a State's witness to defendant's prior misconduct, and (3) that the State's Attorney's argument before the jury was prejudicial.

The record indicates that on the evening of September 26, 1956, the prosecuting witness, Benjamin Martinez, was the sole attendant on duty at a gasoline station located at the intersection of Jackson Boulevard and Ogden Avenue in

Chicago. According to his testimony, about 9:30 P.M. on that date the defendant, in the company of a shorter man, entered the service station and asked for a package of cigarettes, but upon being advised that there were none the shorter man pulled a gun from his pocket, ordered Martinez to raise his hands, and directed him to walk to the back of the station where the grease racks were located. Thereupon, defendant, who was referred to as "Texas" by his accomplice, also brandished a gun and took the victim's watch, which was valued at $200, while the shorter man took Martinez's wallet containing some $70 and a money changer from a nearby desk. Defendant then walked to the front of the service station to look for cigarettes but returned a few seconds later only to be again directed by his accomplice to continue his search. When defendant left the second time the accomplice hit Martinez in the back with his gun and bound his hands and feet with electrical cord, after which the culprits left the premises. As soon as he was able to free himself, Martinez called the police and later accompanied them to the police station to give a statement concerning the robbery. Although he at that date described the defendant as to height, weight, age, and dress, at the time of trial Martinez did not recall the exact description which he then gave but did remember that he had said the defendant was between 30 and 40 years old and had a thin mustache. It was later stipulated that the defendant was 44 years old when convicted.

Martinez also stated that about two weeks after the robbery a policeman came to the service station and showed him five or six pictures, one of which was that of the defendant. Without hesitation, Martinez identified the defendant from his photograph as the taller man involved in the robbery. On November 28, 1956, the prosecuting witness was asked to go to the precinct station to witness a police line-up of six individuals, and again Martinez readily iden-

tified defendant as one of the two men who had robbed him. The identity of the accomplice remains unknown.

The only other witness to testify was August Locallo, the arresting officer, who told of being immediately assigned to the case, of showing the photographs to Martinez, who readily identified the defendant, of arresting defendant at his place of employment in the Sherman Hotel on November 28, 1956, and of thereafter attending the police line-up where Martinez again identified the defendant as one of the two men who robbed him. On cross-examination it was brought out that the defendant had been employed by the hotel for a year prior to his arrest, that he had worked there the day of the robbery, that when arrested the defendant denied any knowledge of the crime, and that a subsequent search of his apartment revealed no further evidence. No witnesses were offered for the defense.

In support of his contention that he was not proved guilty beyond a reasonable doubt, defendant complains that his conviction was based upon an identification by a single witness which was vague, uncertain, and doubtful. With this we do not agree. Although the robbery took only a few minutes, the prosecuting witness was afforded ample opportunity to observe his assailants. The service station was well lighted, no masks were worn by the bandits, each played an active part in the crime, and each was armed. Furthermore, Martinez was able to later give a detailed description to the police, immediately identified defendant when shown a set of five or six different photographs, and thereafter picked him from a police line-up containing five other men. Rather than being objectionable, such type of identification affords a minimum opportunity for error and has been consistently approved by this court. (*People v. Sanders*, 357 Ill. 610.) The mere fact that at time of trial Martinez did not recall the details of a statement given by him to the police some seven months earlier does not

render his testimony unworthy of belief; nor is the identification objectionable because rendered by a single individual. Where, as here, the identification is positive and the testimony credible, a conviction will not be reversed solely because there was only one identifying witness. *People* v. *Arbuckle,* 413 Ill. 441; *People* v. *Del Prete,* 395 Ill. 110; *People* v. *Kozlowski,* 370 Ill. 639; *People* v. *Bridgewater,* 369 Ill. 633.

Neither do we believe that improper reference was made to defendant's prior misconduct. During both direct and cross-examination, the prosecuting witness was questioned without objection concerning the photographs through which the accused was first identified. Thereafter, upon direct examination, August Locallo testified as follows:

"A. After being assigned to investigate the robbery at the gas station, we talked to the complainant, the victim of the robbery and he stated that he . . .

Mr. Lazar: Objection.

The Court: Sustained as to what he said.

Q. You had a conversation with the victim?

A. A conversation with the victim.

Q. And, after you had the conversation with him, will you tell us what you did?

A. We checked our monicker file . . .

Mr. Lazar: Objection. I'd like to be heard on this, Judge."

Contrary to the defendant's argument, this testimony in no way inferred that Brown had previously committed a criminal act. During the robbery the culprit later identified as the defendant was referred to as "Texas" by his accomplice. Following the receipt of such information it would only be reasonable to assume that the police might check their "monicker" file to determine whether any person with such a nickname was there listed. The mere fact that such a check was made, without indicating its result, does

not infer that defendant had a police record or that such examination was connected with the photographs which were later produced. Thus, defendant's position here is much weaker than was presented in *People* v. *Maffioli,* 406 Ill. 315, where we held that photographs used to first identify the accused and bearing the legend "Police Dept., Rockford, Ill. 6874 John Maffioli 8-26-49" were even admissible in evidence.

Finally, it is contended that the State's Attorney improperly mentioned in his opening argument that the jury had not only a duty to decide the case but also an opportunity to strike at the vicious crime of armed robbery which was so prevalent in the community and "which is making it unsafe for persons to run a business or travel about on the street at night or even in the daytime." Objection is also made to the State's Attorney's closing argument in which he said, "Is this the kind of a person you want to send back? That's not the kind of a person I want living next door to me. I don't want anybody like that out in the community with a gun." The State's Attorney, being responsible for law enforcement in the community, has a right in his arguments before a jury to dwell upon the evil results of a crime, to urge a fearless administration of the criminal law, and to comment on the conduct of the accused. (*People* v. *Wood,* 318 Ill. 388; *People* v. *Caylor,* 386 Ill. 501.) It is our opinion that this privilege has not been abused in the present case. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*