People of the State of Illinois, Defendant in Error, v. Charles Green a/k/a Charlie Adams, Plaintiff in Error.

**Gen. No. 50,081.**

First District, First Division.

February 19, 1965.

James V. Callahan, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a narcotics case in which three indictments of three counts each were consolidated for hearing in a bench trial. Defendant was found guilty under each indictment of illegally selling, possessing, and dispensing narcotics, and was sentenced to the penitentiary for a term of ten to twenty years on each indictment, the sentences to run concurrently.

Defendant's writ of error was transferred to this court by the Illinois Supreme Court, by an order which found that it had "no jurisdiction on direct appeal in this case." Defendant contends (1) that he was not assisted by counsel at the time he chose to waive a jury trial, and thereby he was effectively denied the right to a jury trial; and (2) that the evidence did not prove his guilt beyond a reasonable doubt.

As to his jury waiver, defendant concedes "that the Court herein properly informed the Defendant of his right to a trial by jury." He argues "that the Defendant was not assisted by counsel at the time the decision was made to waive a jury trial," and that he was "prejudicially hindered in his right to rationally choose between a jury trial and a bench trial." He cites People v. Terry, 366 Ill 520, 9 NE2d 322 (1937), where it is said that counsel shall be appointed "before a plea of guilty or a jury waiver is accepted."

The record shows that on September 13, 1961, in each indictment, the court appointed the Public Defender to represent defendant. At that time, pleas of not guilty and jury demands were entered in each case. Subsequently, on October 19, 1961, Lawrence E. Smith filed his appearance for defendant in the three indictments. On November 8, 1961, an order was entered allowing defendant's petition for a change of venue in each cause. Also on that date, an order was entered granting leave to A. Donald Bourgeois to enter his appearance as co-counsel for defendant and allowing the Public Defender to withdraw as counsel for defendant.

On the morning of the trial on November 22, 1961, defendant being present in the courtroom, A. Donald Bourgeois stated to the court: "At this time the defendant himself does not wish to pursue the course of conduct that I have advised him to do, and for that reason it is antagonistic for me to represent him. I wish to ask leave to withdraw. Attorney Smith's appearance is still on file." The trial judge inquired as to the whereabouts of Smith and did not rule on the motion. Shortly thereafter, with Bourgeois present, but not Smith, the trial judge informed defendant that he was entitled to a trial by jury and asked him whether he wished to be tried by jury or by the court. The defendant was then granted permission to confer with his sister, after which Mr. Bourgeois informed the court that "the defendant now indicates he wishes to take a bench trial in these three matters and he is ready for trial." The court then asked the defendant once again if he wished "to be tried by the Court." Defendant Green answered, "Yes, I'll take a bench trial." The court then recessed.

The court reconvened at two o'clock that afternoon, and both Lawrence E. Smith and A. Donald Bourgeois appeared before the court, with defendant being pres-

ent. Smith stated: "Sorry I wasn't in court this morning. I talked with the Defendant and he insists upon his innocence and asks for a bench trial." The court then asked Smith whether he understood that the defendant had "already waived a jury," and Smith replied in the affirmative, and the trial then commenced.

The request of Bourgeois to withdraw as counsel for defendant was never ruled upon, and Bourgeois continued to act as co-counsel for defendant and actively participated in the entire trial.

██ In a criminal trial it is axiomatic that the court has a duty to protect from infringement a defendant's right to a trial by jury. The instant record shows that on the morning of November 22, the trial judge was meticulous in informing defendant of his right to a trial by jury, at which time Bourgeois, one of defendant's attorneys, was present. We conclude the record demonstrates that defendant was "effectively" represented by counsel at the time he waived his right to a trial by jury, and that he was not "hindered in his right to rationally choose between a jury trial and a bench trial." We find no merit in defendant's contention of a faulty jury waiver.

We consider next defendant's contention that the evidence did not prove his guilt beyond a reasonable doubt. At the trial, the State presented the testimony of Police Officers Washington and King, and while testifying, they both identified the defendant. The prosecution's trial exhibits were admitted into evidence without objection. The exhibits consisted primarily of three tinfoil packets and their contents, sold by defendant to Officer Washington. Testimonial identification of the three packets received from the defendant, and of envelopes personally marked and utilized as the sealed containers of the packets, was provided by Washington. An analysis by a duly qualified police

chemist of the contents of each packet, and his conclusion of heroin, was established by stipulation.

At the trial, Officer Washington testified that he was an undercover agent for the Chicago Police Department, assigned to the Narcotic Unit of Organized Crime Division. On April 6, 1961, defendant approached Washington and asked if he was interested "in purchasing some 'stuff,' narcotics, heroin," and later on the same date, defendant handed him a silver foil packet, and he handed defendant $19 in United States currency. Officer King was in the vicinity and field tested the powder from the packet. Later, Washington delivered the packet to the Crime Laboratory. Washington further testified in detail as to similar purchases made by him from defendant on April 7, and April 13, 1961.

On cross-examination, Officer Washington testified that he made unwritten reports about the purchases and handled a great deal of narcotics in his "undercover work," and made five or six purchases during the month of April; that defendant was introduced to him as "Charlie Green"; that defendant was arrested May 25, 1961, and he did not make the arrest, nor did he apply for or sign a complaint for a warrant. He was unable to recall the exact description of defendant that he gave to his fellow officers, but he did remember "I told them he was about five feet ten, dark complexion and weighed about 175 or 180 pounds." He could not recall how defendant was dressed on April 6, 7, or 13. He was certain that defendant was introduced to him, but he could not recall the name of the person who made the introduction, nor could he give a physical description of that person. He further testified that two of the sales of narcotics took place in a hamburger hut, where there were other patrons but no police officers, and the transfers were made under the counter, with their hands concealed. The

90

third and final transfer was on April 13, immediately south of the 43rd-Calumet intersection.

Officer King testified that he was a police officer assigned to the Narcotic Unit; that he had a conversation with defendant on May 25, 1961, at 1121 South State Street, while he stood outside of defendant's cell. "I told him who I was and I told him Officer Washington had purchased heroin from him on three separate dates and I gave him the dates . . . . I asked him if he had known Officer Washington and he said no. I asked him if he could have made the sales, and he said, 'I could have made the sales because—.' " On cross-examination, King said that Officer Washington was not present when he talked to defendant. On being recalled as a witness for defendant, King said that Officer Washington obtained the warrant for defendant. Subsequently, the court struck all testimony with reference to the warrant on the theory that the warrant itself was the best evidence.

Defendant testified in his own behalf and denied that he had ever been known, prior to his indictment, as "Charlie Green." He further denied that he had ever seen Officer Washington prior to his arrest on May 25, 1961. He worked in a "peanut shop" on 43rd Street. He was questioned extensively about "glaring" facial scars, which he said he had prior to his arrest. He denied selling narcotics and denied that he told Officer King that he "could have made those sales to Washington." Using defendant's "inmate identification card from the county jail," defendant's attorney read into the record that defendant's height was "5–10" and weight "157."

■ Defendant contends that the identification of the defendant as the person who committed the crime charged was established by the testimony of only one witness, whose testimony was not credible. Defendant cites People v. Brown, 16 Ill2d 482, 486, 158 NE2d 579

(1959), to show that where the State relies upon the testimony of one witness to establish the guilt of an accused, such a witness must be a credible one. We agree. Defendant argues that Officer Washington was unable to remember the name of the person who introduced him to the seller of the narcotics and was unable to recall the physical description of that person; that Washington was unable to recall the clothing worn by defendant on any of the days on which the purchases were made, and that his denial that he had signed a complaint for a warrant was directly contradicted by Officer King.

We have carefully scrutinized the testimony of Officer Washington, and we are not persuaded that his inability to supply the name of the introducing party, or to describe his apparel or that of defendant, is sufficient to demonstrate that he is not a credible witness. The identification of defendant by Washington was positive and worthy of belief. The three sales were made on closely connected dates, during which time Officer Washington had six or more opportunities to see and talk with defendant in lighted areas and for periods of time.

We conclude that the identification of defendant as the person from whom Officer Washington purchased the narcotics was well established. As it is not disputed that the three silver foil packets contained narcotics, and as we find no material impeachment of Washington in the testimony of King, we believe defendant was proven guilty, beyond a reasonable doubt, of the crimes charged. As said in People v. Brown, 16 Ill2d 482, 486, 158 NE2d 579 (1959):

> "Where, as here, the identification is positive and the testimony credible, a conviction will not be reversed solely because there was only one identifying witness."

For the reasons given, the judgments of the Criminal Court of Cook County are affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.