THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES BLAKELY *et al.*, Defendants.—(JAMES BLAKELY, Appellant.)

First District (4th Division)   No. 76-457

Opinion filed June 30, 1977.

Jo-Anne F. Wolfson and Carl P. Clavelli, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

Defendant James Blakely and a co-defendant, Dorothy Gibson, were indicted for armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2), aggravated battery causing great bodily harm (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(a)), and aggravated battery through the use of a deadly weapon (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(b)(1)). At the close of all of the evidence in the trial the State moved for an order of *nolle prosequi* as to the count charging aggravated battery causing great bodily harm. The jury found the defendants guilty on the remaining aggravated battery count, on the armed robbery count, and on the lesser included offenses of robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—1), and theft from the person (Ill. Rev. Stat. 1973, ch. 38, par. 16—1). The court vacated the findings of robbery and theft because they were lesser included offenses. Judgment was entered on the findings of armed robbery and aggravated battery. Both defendants were sentenced to not less than 5 and no more than 15

years in the penitentiary. Defendant Blakely (hereinafter referred to as defendant) then brought this appeal.

Defendant presents three contentions on appeal: he was not proven guilty beyond a reasonable doubt; he was deprived of a fair trial by the State's improper questioning and argumentation; and instruction of the jury on the elements of aggravated battery causing great bodily harm rather than aggravated battery using a deadly weapon constituted reversible error.

We reverse and remand.

At trial Joseph Gorchoff, the complaining witness, testified that on April 2, 1974, he left the Ambassador Hotel on Goethe Street in Chicago after an evening of dinner and drinks with business associates. Outside the hotel entrance Gorchoff took a leather money clip out of his front right pants pocket to tip the doorman who was to get his car. Gorchoff then replaced the clip securely in the same pocket. At that time a woman later identified as Dorothy Gibson bumped into him. Gorchoff testified that her hands were all over him and he started to push her away. He felt her hand touch his front right pants pocket though he could not tell if her hand was inside or outside of the pocket when he felt it. He swore at her and asked her what she wanted. Gorchoff testified: "She was hanging on me * * * she was all over me like an octopus." While they were struggling somebody yelled to Gorchoff that someone was behind him. He turned around and saw a man whom he later identified as the defendant swinging a metal object at him. He was struck with two glancing blows, one to his neck and shoulder and one to his stomach. He then heard someone say "stop or I'll shoot." The defendant went to a double-parked car, and the car "took off," though Gorchoff did not actually see the defendant enter the car. He then saw his money clip on the sidewalk five or six feet away when a policeman picked it up and returned it to him. Gorchoff never saw the clip in the hands of either defendant or Miss Gibson. He did not know it was missing until then; nor did he know if it fell out of his pocket or was taken. He had three or four drinks that evening prior to the incident. The entire incident took a couple of minutes.

Also testifying was Fred Muscarella, a Chicago police officer working off-duty as a security officer at the hotel at the time of the incident. He testified that the doorman ran into the hotel and told him that a man was "getting ripped off" outside. When he went outside he saw Miss Gibson run past him going east on Goethe. He saw the defendant holding a metal bar about three to four feet long, hooked on each end, in a position ready to strike Gorchoff. The defendant was standing off the curb on the street between two parked cars. In defendant's right hand he saw an object which he later determined was Gorchoff's money clip. Muscarella drew

his gun and told defendant to drop his "weapon." When defendant did not respond, Muscarella repeated the order. Defendant lowered the bar to his side but did not drop it. When Muscarella began to approach him a car pulled up, the back door flew open, and defendant dove in the back seat. The car went east on Goethe. Muscarella picked up the clip dropped by the defendant and returned it to Gorchoff, who had identified it as his. In the witness' opinion, based on having seen over a hundred intoxicated people in the course of his duties, Gorchoff was not intoxicated at the time of the incident.

Defendant testified that he and a friend, Tony Mathews, were driving by the hotel on their way to a party. As Mathews was parking the car, defendant saw Gorchoff grab Miss Gibson from behind, throw her to the ground, and hit her with an umbrella. Defendant grabbed the umbrella, ripped it apart, then dropped it while Mathews carried Miss Gibson to their car. Defendant denied striking Gorchoff with the umbrella and denied ever even seeing the money clip. He stated that Gorchoff charged at him, and he began backing away. Officer Muscarella emerged with a gun and demanded to know what was going on. Defendant explained to him that he had stopped a fight and now Gorchoff wanted to fight him. When Muscarella began talking to Gorchoff, defendant "walked into the car." He and Mathews took Miss Gibson to Cook County Hospital, dropped her off, then took her home and proceeded to the party. Defendant had known Miss Gibson "through her boyfriend" for about six months before the incident. He did not recognize her that night until he approached her as she was lying on the ground. About a week after the incident, when he learned there was a warrant out for him, he turned himself in to a policeman on the street.

Dorothy Gibson, Blakely's co-defendant, testified that she was going to the hotel to get a taxi after visiting a friend in the area. She saw Gorchoff drop his money clip after he tipped the doorman. When she picked it up the doorman informed Gorchoff that she had it. She then gave it to Gorchoff and started walking down the street. Gorchoff pursued her, swearing at her and threatening that he was going to "fix" her. He struck her several times with an umbrella, knocking her to the ground. Blakely arrived then and stopped him. Blakely and Mathews tried to take her to the hospital but she did not want to go so they took her home.

On rebuttal Gorchoff denied striking Gibson with an umbrella and denied evey carrying one. He also denied that Miss Gibson ever returned or attempted to return his money clip to him. Officer John Moran testified that on April 9, 1974, he and his partner learned of a warrant for defendant's arrest. They spotted his car on the street and arrested him in a restaurant in the area. Moran denied that the defendant turned himself in to them.

## I.

■■ Defendant argues that his guilt was not established beyond a reasonable doubt. A review of the evidence establishes that as to much of the evidence defendant is disputing the jury's credibility determinations. The determination of credibility is ordinarily the unique responsibility of the trier of fact and a court of review will not disturb that determination unless it is so improbable as to raise a reasonable doubt of the defendant's guilt. (*People v. Yarbrough* (Docket No. 48631, May 20, 1977), ___ Ill. 2d ___, ___ N.E.2d ___; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) Here the jury's determination of credibility was reasonable; it was not so improbable as to require reversal.

However, defendant has correctly indicated that the judgment in this case was based in part on circumstantial evidence. No one testified to having seen Miss Gibson remove the money clip from the person of the complaining witness. Nor did anyone see Miss Gibson transfer the clip to the defendant. Gorchoff testified that after securely placing the clip in his pocket, he became involved in a struggle with Miss Gibson, who had bumped into him. He felt her hands all over him, including in the vicinity of the pocket in which he had placed the clip. But he did not feel or see her take it. In response to a warning he turned around and was struck twice with a metal bar by the defendant. Officer Muscarella arrived and saw the metal object in one of defendant's hands and what he later determined to be Gorchoff's clip in his other hand. Defendant dropped the clip and fled when Muscarella drew his gun. Gorchoff testified that this whole series of events took a couple of minutes. From these facts it was proper for the jury to infer that Miss Gibson took the clip and gave it to the defendant, who then struck Gorchoff in an effort to retain it. Defendant's claim of being an innocent bystander who came to Miss Gibson's rescue is not consistent with his behavior and that of Miss Gibson as related by Gorchoff and Muscarella. Since the evidence as determined by the jury's implicit findings on credibility does exclude defendant's hypothesis of innocent behavior, the finding based in part on circumstantial evidence is a proper one. (*People v. Branion* (1970), 47 Ill. 2d 70, 265 N.E.2d 1, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213; compare *People v. Lewandowski* (1976), 43 Ill. App. 3d 800, 357 N.E.2d 647.) The jury was also justified in inferring from these facts a common design on the part of the two defendants. (*People v. Holmes* (Docket No. 48593, May 20, 1977), ___ Ill. 2d ___, ___ N.E.2d ___; *People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313.) Defendant was therefore accountable for the original taking by Miss Gibson. The evidence established that he aided her in the taking by striking Gorchoff with a metal bar. Although his actions followed those of Miss Gibson, they were part of one continuing transaction lasting only a few minutes. The

common design is proof of intent. Thus all the elements of accountability were properly established, based on the jury's findings on the evidence. *People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904; Ill. Rev. Stat. 1973, ch. 38, par. 5—2.

■■ Defendant also argues that the requisite force for armed robbery was not established because Gorchoff was not aware of the taking at the time defendant struck him; therefore, the force was not used as part of the taking. But because we view defendant's actions in striking Gorchoff as one part of a related series of acts designed to effectuate a taking, we reject defendant's argument. The subjective lack of knowledge of the victim that there had been a taking does not negate the element of force; it was proper for the jury to infer that defendant's blows were for the purpose of completing a successful taking of the clip, regardless of his victim's lack of awareness of that purpose. Additionally, the fact that the force must be contemporaneous with the taking, another point argued by defendant, has been interpreted to include the situation where a peaceful taking is followed by force used to prevent the recovery of property. (*People v. Heller* (1971), 131 Ill. App. 2d 799, 267 N.E.2d 685; *People v. Chambliss* (1966), 69 Ill. App. 2d 459, 217 N.E.2d 422.) This situation is not comparable to the factual situation of *People v. Baker* (1969), 114 Ill. App. 2d 450, 252 N.E.2d 693, cited by the defendant, where the taking was successfully completed and then the victim was gratuitously struck by his attackers.

■■ In summary, the evidence in this case was close. The question of credibility of the witnesses was crucial. Even assuming the jury's acceptance of the credibility of the State's witnesses, they were also required to infer that certain actions by defendant and Miss Gibson took place based on circumstantial evidence. There was no eyewitness to the taking from the complaining witness, nor to the transfer of the property to the defendant. Still we are satisfied that this evidence, while close, was sufficient to permit the jury to reach the findings it did. Their determination, if based solely on the evidence we have discussed, would meet the test on review; it was not so improbable as to raise a reasonable doubt of defendant's guilt. *People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595.

## II.

■■ But even where "considerable evidence" supporting a defendant's guilt has been established, our supreme court has ruled that a reversal is required where the reviewing court finds severely prejudicial errors which cannot be said not to have contributed to the conviction. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) In a line of questioning of Officer Muscarella, which the State had indicated to the court was for the

purpose of supporting his identification of the defendant, the following was elicited:

"MR. ROTH: Q. Where had you see James Blakely before that evening?

MR. LEVIN: Objection.

THE COURT: Overruled.

THE WITNESS: During my normal course of duties as a Chicago police officer I not only work in the 14th District—

MR. LEVIN: Objection. Irrelevant.

THE COURT: The question was where did you see him before, not the normal course of your duties. Just tell us where you saw him before.

THE WITNESS: I seen him at the 11th District and the 15th District and part of the 14th District.

MR. LEVIN: Objection. Irrelevant. And move that it be stricken or explained as to what it is.

THE COURT: Objection sustained. If you tell where you saw him I'll allow that; but, not to give us a generality about the districts of Chicago.

THE WITNESS: I have seen him on Madison Street in the 15th District. I have seen him on Kedzie Boulevard in the 11th District. I have seen him on Chicago Avenue in the 14th District. To my best recollection, that's all I can remember."

Later the officer was asked whether after the incident he found out defendant's name:

"Q. Did you subsequently have occasion to find out his name?

A. Yes, I did.

Q. Do you recall when it was that you were able to ascertain what his name was?

MR. LEVIN: Objection.

THE COURT: Overruled.

THE WITNESS: The following morning.

MR. ROTH: Q. How was it that you were able to ascertain his name?

A. Through—I received information from different tact officers.

MR. LEVIN: I am going to object again, Your Honor.

THE COURT: Objection sustained.

MR. LEVIN: I move for a mistrial at this point.

THE COURT: Denied."

During cross-examination defendant was shown a lineup photograph which included Miss Gibson. He was asked whether he recognized any of the people in it:

"MR. ROTH: Do you recognize who is—Do you recognize any of the women in that picture?

MR. LEVIN: Objection.

THE COURT: Overruled.

THE WITNESS: Two

MR. ROTH: Q. You recognize two women in that picture?

A. (Nodding)

Q. Who do you know in that picture?

MR. LEVIN: Objection.

THE COURT: Overruled.

THE WITNESS: Dorothy Gibson. I seen this lady here before.

MR. ROTH: Q. Do you know the name of the other lady you recognize?

A. No, I don't. I know she works at 11th and State.

\* \* \*

MR. ROTH: And do you know the names of the two ladies that you know in that picture?

MR. LEVIN: Your Honor, so I won't interrupt Mr. Roth any more, there's a continuing objection. This whole line of questioning is highly prejudicial and totally irrelevant.

THE COURT: Thank you very much. Proceed.

THE WITNESS: No, I couldn't tell you the lady's name, the elderly lady in the white.

MR. ROTH: One lady you know is Dorothy Gibson?

A. Betty.

Q. Do you know Dorothy Gibson as Betty?

A. Yes.

Q. What's her real name?

A. Ask her. I don't know.

Q. Now, the lady, the other lady you know in this picture, is dressed in white, did you say?

A. Yes, the elderly lady right here.

Q. You don't know where you know her from?

A. I told you 11th and State.

Q. When did you see her at 11th and State?

MR. LEVIN: Your Honor, may I object?

THE COURT: Objection sustained. Strike it.

MR. ROTH: 11th and State is the police headquarters.

MR. LEVIN: Objection. Move that be stricken.

THE COURT: Objection sustained. Strike it."

■ We agree with the defendant that the only real purpose of these excerpted questions and answers was to convey to the jury the impression

that the defendant was well known by police officers because of prior criminal activities. As such they were improper and prejudicial. (*People v. Harges* (1967), 87 Ill. App. 2d 376, 231 N.E.2d 650; *People v. Colston* (1967), 81 Ill. App. 2d 75, 225 N.E.2d 801.) This was not a case in which the evidence against the defendant was so overwhelming as to render any errors clearly nonprejudicial. Nor are we satisfied that this prejudical effect was eliminated when the trial court sustained defendant's objections and struck some of the testimony. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432; *People v. Cepek* (1934), 357 Ill. 560, 192 N.E. 573.) The judgment was based to a major extent on the jury's determinations of credibility and then on inferences from circumstantial evidence based on those determinations. These improper statements which suggested the possibility of prior criminal activities by the defendant deprived him of a fair evaluation of his credibility. For that reason his convictions must be reversed.

## III.

Defendant's other assertions of prejudicial questioning are not likely to arise again on retrial and we will not discuss them. However, we will discuss his contention that the giving of an improper jury instruction requires reversal of his convictions. The alleged error arose when the jury was instructed on the elements of the aggravated battery count based on infliction of great bodily harm, a count which the State had nolle prossed. The jury was given a general definitional instruction on the proper aggravated battery count based on use of a deadly weapon, but they were not given an instruction defining the elements of that variant of the offense. Without ruling on the merits of the question we do note that the cases cited by the defendant involved instructions specifying or suggesting substantively different offenses than those with which the defendant had been charged. Thus in *People v. Stanko* (1949), 402 Ill. 558, 84 N.E.2d 839, the court reversed defendant's conviction for attempted abortion because the jury received an instruction on the substantive offense of abortion as well as on attempt. But a line of recent cases suggest that where, as in the case at bar, the instructions merely involve variants of the same offense, and where defendant can show no harm to his defense by surprise nor any potential double jeopardy resulting, there is no error. (*People v. Turner* (1976), 35 Ill. App. 3d 550, 342 N.E.2d 158; *People v. Allen* (1974), 56 Ill. 2d 536, 309 N.E.2d 544, *cert. denied* (1974), 419 U.S. 865, 42 L. Ed. 2d 102, 95 S. Ct. 120; *People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136.) The State did not address this issue but rather conceded error on the aggravated battery conviction because defendant's actions in committing the aggravated battery were intended to aid in the robbery and supplied the force element of that robbery;

therefore they did not support a separate conviction because they were not independently motivated or otherwise separable. (*People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24.) But *Stewart* and the subsequent cases relying on it were recently overruled insofar as cases involving concurrent sentences were concerned in *People v. King* (1977), 66 Ill. 2d 551, 556, 363 N.E.2d 838, 845, where our supreme court held "when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." The court specifically rejected the "independent motivation" test as to concurrent sentences and defined "act" as "any overt or outward manifestation which will support a different offense." (66 Ill. 2d 551, 556, 363 N.E.2d 838, 845.) Although we need not rule on the issue, it would appear that the holding of *King* would support concurrent sentences based on the two convictions before us.

For the foregoing reasons the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.

DIERINGER, P. J., and JOHNSON, J., concur.