THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GREGORY MAYS *et al.*, Defendants-Appellants.

First District (5th Division)    No. 77-1894

Opinion filed June 15, 1979.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Paul C. Gridelli, and Wesley H. H. Ching, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendants were each charged by information with one count of armed robbery. A jury found both defendants guilty and they were sentenced to terms of four to six years. On appeal defendants contend that: (1) they were denied their right to a fair trial because of repeated suggestions made at trial that they had committed other crimes; (2) the complaining witness' testimony was insufficient to prove them guilty beyond a reasonable doubt; (3) the court improperly admitted hearsay evidence of the complaining witness' out-of-court identification of defendants; and (4) they were denied their right to a fair trial because of the comments made by the prosecutors in their closing arguments. We affirm. The pertinent facts follow.

Valerie Jones testified for the State. She now lives in Florida. On August 4, 1976, she was living with her parents at 669 East 38th Street in Chicago and worked at an office in the downtown area. Shortly after 7 a.m., as she was walking east on the north side of 38th Street toward Cottage Grove to catch a bus for work, she was approached by a man whom she identified at trial as defendant William Harris. Harris crossed 38th Street and came up to her on her right side, grabbed her right arm and showed her a black, square-shaped gun which he was carrying under a newspaper in his right hand. Valerie Jones said, "What's this?" and Harris told her to come with him, still holding her arm as they went down a broad sidewalk, opposite a playground, to a porch at the back of another apartment building. As they were walking, she noticed another young man, whom she identified as defendant, Gregory Mays, following behind them as they approached the porch, where Harris let go of her arm.

Mays reached into her handbag and removed her coin purse, which contained a $10 bill, a few singles and some change. He returned the coin purse after he emptied it and then removed Valerie Jones' wristwatch from her arm. Harris asked if she had anything else, and Valerie Jones gave him her wallet, which contained $130, some credit cards and her driver's license. Upon obtaining the wallet, Harris and Mays ran west down the sidewalk, cutting through the building at 727 East 38th Street.

Valerie Jones ran out into the street and back home, where she immediately called the police. Officer Alfred Kirk and his partner responded to the call and came to the apartment. She related the incident to them, described the men who had robbed her and told them what had been taken. At about 10 a.m., she again called the police and the same officers returned. She gave the police the names of the men who had robbed her and added that her watch had also been stolen from her.

Later that same day Valerie Jones saw Mays standing in front of the building at 727 East 38th Street and called the police, but they did not respond to the call. She did see a patrol car in the area about half an hour later, but she no longer saw Mays in the area. About two weeks later she saw Harris across the street from her apartment but did not call the police, remembering that they hadn't come when she had reported seeing Mays.

Valerie Jones testified that as she was returning home from work between 5 and 6 p.m. on August 24, she noticed numerous police cars and a crowd of people in front of her apartment. Once inside the apartment, she looked out the window and saw Harris and Mays, who were being taken into custody by the police along with a third man. She then called several police stations, asking if they had just arrested three men. Having found out where they were taken, she went to the police station, where she was questioned by police, viewed a lineup composed of five black men, and identified Harris and Mays as the men who had robbed her.

Valerie Jones also testified that she did not know the name of either Harris or Mays before the robbery on August 4, that she had never dated either defendant, and that she did not recall that her sister Angela had ever dated either one.

On cross-examination Valerie Jones testified that the entire incident took approximately five minutes and that there was not much traffic and few people around the 727 building at the time. She did not really notice who had been playing at the playground. She was shown a picture which included Mays and her brother and said she had shown the picture to the police the second time they came to her home on the day of the robbery. She had learned the names of her assailants after describing them to her sister. Valerie also testified that she did not have a conversation with Mays in which she told him to stop dating her sister and that she had never had a Master Charge credit card and none was taken from her.

Officer Michael Cozzi testified that he was assigned to the tactical unit as a plainclothes officer on August 24, 1976, when he arrested Harris, Mays and a third man. Cozzi received a phone call at the police station, after which Valerie Jones came to the station with another woman. On cross-examination he testified that no weapon was found when defendants were searched upon their arrest.

Robbery investigator Thomas Grady testified that he and his partner,

Richard Crowley, were called to the police station at 29th and Prairie on August 24, 1976, where they met Valerie Jones and Officer Cozzi and his partner in the tactical unit's room. Valerie Jones was taken to an interrogation room while Grady went to the lockup to get five prisoners for a lineup. She identified two of the men. Grady was later recalled over defendants' objections and testified that Valerie had identified both Harris and Mays at the lineup.

Officer Alfred Kirk, Jr., testified that he and his partner, Officer Hubert, answered a radio call at about 7:30 a.m. on August 4, 1976, and went to Valerie Jones' apartment to talk to her. They returned later that day and only talked to Valerie at the time. On cross-examination Officer Kirk testified that one of the credit cards she reported as stolen was a Masters card, not a Master Charge card. He did not receive any information regarding her driver's license and was told about her watch on his second visit to her home. When he went to Valerie's apartment the second time, she gave him the names of her assailants and said she knew them from the neighborhood.

Investigator Grady was called as a defense witness and testified that he had obtained his information about Valerie Jones' credit cards from Officer Kirk's report and that she did not tell him how many cards were taken. She did tell Grady about her watch and how much money was taken, but did not mention her driver's license to him. Grady did not contact Sears, Master Charge, American Express or the Secretary of State.

Deborah Patterson testified that she had been Mays' girlfriend since June 1976 and that she knows Harris and recognizes Valerie Jones from the neighborhood. Ms. Patterson also knows Valerie's sister Angela who, she said, used to be Mays' girlfriend. During the summer of 1976 she saw Mays almost daily, but not in the mornings, and saw Mays with Harris three or four times a week. She never saw Mays with Valerie and had seen Angela with him only once. She also testified that Mays also used the last name of "Patterson" and that Harris was also known as "Red."

Defendant Gregory Mays testified that he had lived at 727 East 38th Street for 15 years and had moved in 1975. He identified the photograph that had been shown to Valerie Jones as an eighth-grade class picture which included both him and her brother David. He had gone to the home of Valerie Jones' family a few days prior to trial before she arrived from Florida and had talked with Angela and David. He had known Angela for 2½ years and she was his girlfriend. Mays testified that he had spoken with Valerie in late July or early August of 1976 at a local park and she told him to stay away from Angela. Angela was elsewhere in the park at the time. Mays said that he saw Valerie almost every day as she passed by a local gathering place called the "rock" on her way home from work. He also saw David nearly every day during the summer of 1976.

On cross-examination Mays testified that he had dated Angela from late June to mid-August of 1976, although he never picked her up at home. He had been inside her family's apartment four or five times, however, but all such visits were made since his arrest and Valerie was never there at the same time. Valerie spoke to him twice about Angela but he did not talk to Angela about it. He would speak to Valerie as she passed the "rock" but he was never in her immediate presence when he was with Angela. He also testified that at the time of his arrest he had a letter in his pocket that was addressed to Michael Patterson, who is Deborah Patterson's brother. He never told the police his name is Michael Patterson. Mays has known Harris for about seven years and they are good friends. Mays further testified that he did maintenance work at an apartment building in DesPlaines during the summer of 1976, but he did not work on August 4, 1976, and did not remember anything about that day.

William Harris testified that he was not employed on the day of the robbery, that the earliest he ever awakened was 9 a.m. for an appointment at the unemployment office, and that he was not awake at 7 a.m. that day. He did not remember anything about August 3 or 4. He also testified that he knows Valerie Jones by sight and that he also knows Angela and David. He stated that he does not own a gun and that he did not rob Valerie.

Officer Michael Grillo, Officer Cozzi's partner, testified in rebuttal that Mays gave his name and address as Michael Patterson of 727 East 38th Street when he was arrested. Harris gave his address as 4816 South Evans. When Mays was searched after being taken into custody, no letter or other property was found in his possession.

Officer Cozzi gave rebuttal testimony that Mays gave the name of Michael Patterson when he was arrested. Cozzi also testified in surrebuttal that he and his partner did not go directly to the police station after placing Harris and Mays under arrest but instead stopped for about a minute at another location in the area.

Following closing arguments and the instruction of the jury, the jury returned guilty verdicts against both defendants. After sentencing and the denials of their post-trial motions, defendants appealed.

OPINION

## I.

Defendants first contend that they were denied a fair trial due to suggestions repeatedly made to the jury that defendants had a propensity to commit the offense with which they were charged.

■▌ The first instance of which defendants complain arose in the course of the defense cross-examination of Valerie Jones when she was questioned regarding her failure to call the police after seeing defendant Harris on the street. She replied that she hadn't called the police because they had not

come at an earlier time when she had called to report having seen defendant Mays. The following colloquy then occurred:

"Q [Defense counsel]: But when you testified at the preliminary hearing, you did testify that you were waiting until you got them together again, didn't you?

A [Ms. Jones]: Yes, I did, just like they were when they robbed me, waited till they were together, they always rob people together."

Defendants' motion for a mistrial was denied, and the jury was instructed as follows:

"The Court: Ladies and gentlemen of the jury, in the last response of Mrs. Jones, it gave to the last question, the last phrase was, 'They always rob people together.' There will be no evidence throughout the course of this trial that these two young men are charged with any other crime or that they have ever in fact participated in any other crime.

I would therefore ask you please to disregard that last statement."

Relying on *People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104, and *People v. Curry* (1975), 25 Ill. App. 3d 637, 323 N.E.2d 778, defendants maintain that Valerie Jones' statement was volunteered and unresponsive and thus warrants a reversal of defendants' convictions. We disagree. Both *Richardson* and *Curry* involved witnesses who were police officers with experience in testifying. While Valerie Jones' answer was not responsive, it cannot be seen as voluntary as was the testimony in *Richardson* and *Curry*. It was instead a response triggered by defense counsel's persistent cross-examination in which he repeatedly tried to get the witness to tell him why she hadn't called the police again. The State will not be held responsible for the testimony thus elicited by defendants. *People v. Burage* (1961), 23 Ill. 2d 280, 178 N.E.2d 389.

Furthermore, unlike *Richardson* and *Curry*, the trial court in the instant case immediately acted to cure any error by granting defendants' motion to strike the last portion of Valerie Jones' answer, by informing the jury that there would be no evidence that defendants ever participated in any crime other than the one for which they were being tried and by instructing the jury to disregard the witness' comment. Such action by the trial court was sufficient to remedy any error caused by Valerie Jones' statement. (*People v. Dukett* (1974), 56 Ill. 2d 432, 446, 308 N.E.2d 590, 598, *cert. denied*, 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226.) *People v. McCray* (1978), 60 Ill. App. 3d 487, 377 N.E.2d 46, cited by defendants, is inapposite. In *McCray* the court held that the prejudice caused by the State's asking the defendant if he had any occupation other than robbing people could not be cured by instructing the jury to disregard the statement. No such circumstances can be found here. The State had no part in causing the

improper remark and the error caused by Valerie Jones' gratuitous statement was of a much smaller magnitude, thus making it susceptible to being cured by prompt action on the part of the trial court.

Defendants claim that they were also prejudiced by the State's interjecting Mays' use of an alias into its cross-examination of Deborah Patterson, asking Harris if he had ever possessed a gun or ammunition and displaying Harris' arrest record within the view of the jury.

■ The issue regarding Mays' use of an alias has been waived. The matter was not raised in defendants' post-trial motions (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856) and an exception to the waiver rule is not called for because evidence that Mays used another name does not constitute reversible error, for "[i]t is merely speculation to conclude that a jury will automatically associate an assumed name with a criminal background." *People v. Berlin* (1979), 75 Ill. 2d 266, 268, 388 N.E.2d 412.

■ We find no prejudicial error resulting from the questioning of Harris on cross-examination. On direct examination defendant Harris was asked if he owns or had ever owned a gun and answered both questions in the negative. The question regarding possession of a gun was clearly invited by defendants' line of questioning. Moreover, by sustaining the objection to the question, the trial court prevented the admission of any prejudicial evidence. While the question regarding the possession of ammunition cannot be seen as invited, the trial court again acted promptly to avoid any prejudice to defendants when it sustained the objection to that question.

While the State may not be allowed to take advantage of defendants' tactical errors (*People v. Brown* (1978), 61 Ill. App. 3d 180, 377 N.E.2d 1201), we do not agree with defendants' contention that the error caused by posing the two questions could not be cured by sustaining defendants' objections to them. Unlike *People v. Blakely* (1977), 50 Ill. App. 3d 536, 365 N.E.2d 996, which is cited by defendants, we are considering here the impact of two questions which the trial court never allowed to be answered rather than an extensive line of questioning in which evidence was admitted that conveyed the impression that defendant was well-known to the police.

The error caused by displaying Harris' arrest record was also harmless. During the State's cross-examination of Harris, defendants moved for a mistrial on the grounds that the arrest record was being displayed to the jury while Harris was being questioned. The motion was denied, and all parties were firmly admonished to be wary of their actions while questioning the witnesses. The trial court was in the best position to observe the actions of the State's Attorney and to determine the extent to which the displayed arrest record may have affected the jury in exercising its discretion in deciding the motion for mistrial. (See *People v. Scott* (1963), 29 Ill. 2d 97, 193 N.E.2d 814.) We are not swayed by defendants'

claim that they were prejudiced by the arrest record merely because some jurors indicated their belief that defendants had some "run-in" with the police, for the testimony of the witnesses disclosed that defendants were identified by Valerie Jones after they had been taken into custody by the police for some other matter.

In summary, there was only a single instance in which it was suggested that defendants had a propensity to commit the offense of armed robbery. That suggestion occurred during Valerie Jones' testimony and was cured by the trial court's action. The other instances did not show an inclination to commit the offense charged and did not result in any other prejudice to defendants. Defendants have not shown that the trial court abused its discretion in denying the motions for mistrial, and we therefore find that defendants were not denied their right to a fair trial.

## II.

Defendants next contend that they were not proven guilty beyond a reasonable doubt, maintaining that the testimony of Valerie Jones, the complaining witness, was inconsistent and contrary to human experience. In support of their contention, defendants allege numerous inconsistencies in Valerie Jones' testimony, especially with regard to the items taken from her and her failure to contact the police each time she saw defendants.

Valerie Jones testified that she was approached by Harris as she walked along 38th Street on her way to work the morning of August 4, 1976. Harris showed her a gun, told her to come with him and led her behind a building while holding on to her arm. Mays followed them and, upon arriving at the building, took Valerie's coin purse from her handbag, emptied it and returned it to her. Mays also took her watch off her arm. Harris asked if she had anything else and she handed him her wallet. Both men then fled.

Valerie Jones immediately returned home and called the police. When they arrived, she told them of the robbery, described Harris and Mays and told the police what had been taken. A few hours later, she called the police to her home again and told them her watch had also been taken, gave them the names of the men who had robbed her and showed the police a school photograph with Mays and her brother in it.

Defendants maintain that there is reasonable doubt as to whether Valerie Jones' watch and a Master Charge credit card were taken. The short delay in telling the police of her missing watch cannot be characterized as contrary to human experience as defendants urge. Valerie's testimony regarding a Master Charge credit card was simply to say that she never had one and had not reported one missing. When Officer Kirk was questioned regarding the notation on a report of a "Masters" credit card, he stated specifically that he was not referring to a Master

Charge credit card. Furthermore, defendants have not raised any challenge to the claim that the other credit cards and some cash were taken from Valerie Jones. The inconsistencies in her testimony regarding the items taken is not significant enough to raise a reasonable doubt as to whether some property was taken from her.

Nor do we find any merit to defendants' contention that Valerie Jones did not inform the police of the full extent of her knowledge regarding the identity of her assailants and did not notify the police when she saw defendants.

Valerie Jones called the police as soon as she discovered the identity of her assailants. She told the police the defendants' names and showed them a photograph which included Mays. Her testimony that she called the police when she saw Mays on the street later that day was uncontradicted, although she stated that the police did not respond to her call. The only other time at which she claimed to have seen one of defendants was when she had seen Harris on the street. She did not call the police at that time, the witness testified, because she was waiting to see the two men together and because she remembered that the police had not come the last time she had called. The only other time Valerie testified that she saw defendants was on the day they were taken into custody in front of her home at which time she contacted the police within about 20 minutes and went to the police station to which defendants had been taken.

Defendants' reliance on *People v. Charleston* (1970), 47 Ill. 2d 19, 264 N.E.2d 199, is misplaced. There, the complaining witness had gone to school with the defendant, knew him personally and by name, and knew that he was a friend of her husband, but nonetheless waited a week before relating that information to the police. No such concealment can be found here, where Valerie Jones immediately notified the police as soon as she received additional information as to the identity of defendants. Nor do *People v. Hughes* (1974), 17 Ill. App. 3d 404, 308 N.E.2d 137, and *People v. King* (1973), 10 Ill. App. 3d 652, 295 N.E.2d 258, provide support for defendants' position. Unlike the instant case, in both *Hughes* and *King* witnesses had failed to divulge all of their knowledge as to the identities of the defendants and there were questions raised as to whether the witnesses were positive of their identifications of the defendants.

It is well established that the testimony of a single witness is sufficient to convict even if that testimony is contradicted by the accused, provided the witness' testimony is positive and credible. (*People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631; *People v. Fleming* (1975), 32 Ill. App. 3d 418, 336 N.E.2d 244.) Moreover, convictions have been upheld in many similar instances involving the testimony of a single complaining witness. In *People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736, a cab driver had

been robbed at gunpoint by a passenger. Upon seeing his assailant on the street 13 days later, the cab driver trailed him until he encountered the police, who then made the arrest. The cab driver was subjected to extensive cross-examination but his identification of the defendant remained unshaken. In *People v. Beason* (1975), 32 Ill. App. 3d 305, 336 N.E.2d 511, the fact that the property claimed to have been taken was not recovered in the defendant's possession was held insufficient to raise a reasonable doubt as to his guilt, and in *People v. Brown* (1959), 16 Ill. 2d 482, 158 N.E.2d 579, the fact that at the time of trial the complaining witness did not recall details of statements made several months earlier did not make the witness' statements unworthy of belief.

Defendants have not substantiated their claim that there is a reasonable doubt as to their guilt, and their contentions regarding inconsistencies in testimony amount to an attack on Valerie Jones' credibility. The jury has obviously accepted her testimony as true and we will not attempt to substitute our judgment for theirs. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320; *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

### III.

Defendants next contend that they were prejudiced by the admission of Officer Grady's testimony that Valerie Jones identified defendants in a lineup he conducted.

While the admission of hearsay identification testimony is improper, it constitutes reversible error only if it is used as a substitute for an in-court identification or as a means of corroborating a weak identification. (*People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.) Valerie Jones herself testified that she had identified defendants in the lineup conducted by Grady and she also testified that she had identified Mays in a group photograph. In addition, she identified both defendants in the courtroom.

The instant case is unlike *People v. Simpson* (1976), 39 Ill. App. 3d 318, 349 N.E.2d 441, cited by defendants, in which a witness had testified only that he had identified someone in the line-up and the police officer testified that the person so identified was the defendant. Moreover, because Valerie Jones was present at the trial, testified to the prior identification and was subject to cross-examination by defendants, the basis for the application of the hearsay rule was absent, the fundamental reason for the hearsay exclusion being the inability to subject the declarant to cross-examination. *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164; *People v. Warren* (1975), 32 Ill. App. 3d 218, 336 N.E.2d 557.

Valerie Jones' courtroom identification of defendants was both positive and corroborated and Grady's testimony thus was merely

cumulative. Accordingly, we find that the admission of Grady's testimony concerning the lineup identification by Valerie Jones was harmless error.

## IV.

Lastly, defendants contend that they were prejudiced by comments made by the State in closing argument, maintaining that the prosecutor expressed his opinion as to defendants' guilt, urged their convictions solely on the grounds that they were being prosecuted and commented on their exercise of their fifth amendment rights. Defendants cite two instances from the State's rebuttal argument, neither of which support their claim that they were denied a fair trial.

The first instance cited by defendants occurred when the prosecutor argued that the complaining witness could not frame defendants without the assistance of the police and the State's Attorney and that if the jury believed the officers would risk their badges and the prosecutors their licenses in order to participate in a frame, then the jury should find defendants not guilty. Defense objections to the comments were overruled.

Defendants contend that the prosecutor's comments constituted an expression of his personal belief that defendants were guilty, placed the integrity of the Chicago Police Department and the State's Attorney's Office behind the testimony of Valerie Jones and vouched for her credibility. The State, on the other hand, maintains that the comment was invited by defendants' closing argument which accused the complainant of lying and implied that the police and prosecution went along with her lie. We agree with the State's position.

Defendants' closing arguments included repeated statements which challenged Valerie Jones' testimony and implied that there was some official involvement by stating that the police didn't believe her, in spite of the fact that their testimony supported her statements. Defense counsel began by saying, "Now let's see who is not telling the truth," and proceeded to discuss conflicts in the testimony of the police officers as to whether or not they stopped en route to the police station the night defendants were arrested. Defense counsel next argued:

> "That police officer got up there and couldn't even get the names right in here [referring to whether Mays had given the name of Patterson at the time of his arrest]. Did he make a mistake or were they trying to get him to say something that didn't really happen. And if it did happen that way, if they knew about these names all along, about the names being mixed up with the wrong name, when [Officer] Cozzi was here before why didn't he testify to that?"

Regarding Officer Grady's lineup testimony, defense counsel further argued:

> "You saw his demeanor. Did it look to him like he was convinced that Valerie Jones was telling the truth?"

Defense counsel also commented on the absence of an arrest warrant and argued that there was none because the police probably analyzed the robbery reports and concluded "that they did not believe Valerie Jones."

Defendants' contention that the comments of defense counsel were merely comment on "internal contradiction" and the "lack of corroboration" in Valerie Jones' testimony is untenable. The argument stated that the police did not believe Valerie Jones' story about a robbery but that they testified in spite of their belief that she was not telling the truth. Implicit in the argument is the conclusion that the police officers either knew the truth and testified falsely nonetheless or that someone in control of the prosecution was, in the words of defense counsel "trying to get [the police] to say something that didn't really happen."

■■ Such an attack on the credibility of the complaining witness and the simultaneous implication that the police officers either lied or were induced to lie justifies the response made by the State in rebuttal. In *People v. Griggs* (1977), 51 Ill. App. 3d 224, 226, 366 N.E.2d 581, 583, defense counsel argued, " 'Now, why are there different stories? Because they are made up.' " That statement was held to imply the prosecutor's participation in presenting false testimony and the court consequently found that the State's rebuttal argument that the prosecutors would not risk their licenses by presenting false testimony was not improper.

In *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256, which was cited by defendants, while the State made comments similar to the ones made here, the court found that they were not provoked by the defendants' argument and were therefore prejudicial. *People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217, is also distinguishable. There, the prosecutor made several comments in which he vouched for the credibility of the State's witnesses, implied that the defendant was an habitual criminal and characterized the defense as a fabrication. The statements were made in closing argument rather than rebuttal and were not invited by the defense, and the court held them to be highly prejudicial. *People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577, and *People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330, also cited by defendants, are equally distinguishable.

■■■ Turning to defendants' contention that the prosecutor improperly commented on their post-arrest silence, we find that the claim of error is also unfounded. The prosecutor stated that defendants had had 5½ months from their arrest to their trial to corroborate the details of their testimony.

The comment, while improper, is not a comment on post-arrest silence which would be reversible error under *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. *Doyle* held that the use of post-arrest silence for impeachment purposes, when the defendant had received the "Miranda" warnings as to his right to remain silent, constitutes a denial of due process and the *Doyle* rule is therefore not applicable here. *People v. Suggs* (1977), 50 Ill. App. 3d 778, 365 N.E.2d 1118, also provides no support for defendants' position, for it involved a *Doyle* situation in which the prosecutor had repeatedly attempted, both in cross-examination and closing arguments, to bring out the defendant's failure to tell his self-defense story to the police. Defendants' objections to the comments here were immediately sustained and the jury was instructed to disregard them. Any harm caused by the prosecutor's comments was thereby cured. *People v. Hamilton* (1975), 27 Ill. App. 3d 249, 327 N.E.2d 35.

## V.

For all of the foregoing reasons, we find that none of the errors claimed by defendants acted to their prejudice and there has been no reasonable doubt raised as to their guilt. Accordingly, the convictions of Harris and Mays are affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.