(No. 36866.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. CLIDELL STEVENSON, Plaintiff in Error.

*Opinion filed September 28, 1962.*

362

John R. Snively, of Rockford, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and William R. Nash, State's Attorney, of Rockford, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Rosario A. Gaziano, Assistant State's Attorney, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Defendant, Clidell Stevenson, who waived a jury and was tried in the circuit court of Winnebago County, was convicted of assault with intent to murder one Leonard Gondolfo and sentenced to the penitentiary for a term of not less than two nor more than seven years. He prosecutes this writ of error for review, his only contention of substance being that he was not proved guilty beyond a reasonable doubt.

Leonard Gondolfo operated a service station in the city of Rockford and was acquainted with defendant who traded at the station and had also washed cars there. On April 24, 1960, defendant's auto was pushed to the station after it had run out of gas and defendant, being without funds, proposed to pawn a tire for a dollar's worth of gasoline. When Gondolfo refused and brought up that defendant still owed $1.85 for a tire repair six months previous, an argument ensued which culminated with defendant being taken to a hospital with a fractured skull, scalp and facial lacerations and some teeth knocked out.

By Gondolfo's version, which is at times vague and confused, he and defendant first talked on the drive but then went inside the station where defendant became belligerent and drew a knife. The witness said he went outside for a time but when he returned defendant was still waving the knife and uttering threats, so he went outside a second time and was followed by defendant. When the latter continued his abusive language Gondolfo again went into the station where he procured a gun from a desk drawer with the intention of frightening the defendant away. However, before he could level the gun, defendant purportedly struck him in the head with the fist clasping the knife, dislodged the gun from his hand and picked it up. He said defendant grabbed him, wrestled him outside through the door, threw him down on the ground, dropping the gun in the process, then picked up the gun, aimed it at him and pulled the trigger twice, but the gun did not go off. He further stated that he did not know where the knife was while this latter skirmish was going on.

Continuing with Gondolfo's testimony, he related that he arose from the ground, went to a nearby tire rack and procured a tire iron, then returned to the spot of the scuffle and struck defendant with the iron, first in the hand holding the gun and then in the head, continuing his blows after defendant had fallen to the ground. Gondolfo said defendant did not try to protect himself from the blows because defendant was engrossed with the gun and did not see the witness approaching with the iron.

Defendant denied that he had pulled a knife, that he had threatened Gondolfo, or that he had ever had the gun in his hand. He testified that while they were exchanging words at the desk, Gondolfo suddenly took a gun from the drawer and started walking toward him. Defendant backed out the door but Gondolfo kept coming and, when he came close, defendant, fearing that Gondolfo intended to use the gun, grabbed the latter by the arm and both men fell to the

ground near the tire rack. According to defendant, Gondolfo came up from the floor wielding the tire iron while he, defendant, grabbed the lid of a nearby refuse can and sought to use it as a shield while backing towards his car. He said Gondolfo struck at him repeatedly bending the lid double and inflicting the head and face injuries previously disclosed. A passerby testified to having seen Gondolfo strike defendant with the iron as the latter was lying on the ground.

Police officers who came to the scene in a first aid car testified that defendant was lying in the driveway, semiconscious and bleeding from the head and mouth, while Gondolfo had a bruised arm and a puncture wound on the left side of the head which they patched up. One officer testified Gondolfo told him he "thought there was a knife involved," but that no knife could be found. Other officers, who came in a squad car, were told by Gondolfo that he had been threatened with a knife, but they too, could not find it. Still another officer, who searched defendant's clothing at the hospital, found a closed knife in a trouser pocket and Gondolfo identified it as the knife wielded by defendant.

The gun involved was turned over to the police and was found to contain five live cartridges, one of which had an indentation in the primer. But whether this mark was new or old, could not be ascertained. An officer testifying for the People stated that the spring in the gun's hammer release was broken, that the trigger would not function and that for the trigger in its present state to have made the indentation in the primer, it would have been necessary to push the trigger forward with a "terrific" force.

On the basis of the foregoing evidence, the trial court found that defendant had made assaults on Gondolfo with both a knife and a gun, and adjudged him guilty of assault with intent to kill.

Where, as here, a case is tried before the court without a jury, it is the function of the trial judge to resolve the con-

flicting testimony, to determine the credibility of the witnesses and to assess the weight to be afforded their testimony. On review, the findings of the court in such respects will not be lightly set aside. But, on the other hand, a judgment of conviction can be sustained only upon credible evidence that removes all reasonable doubt of guilt, and where the evidence of the prosecution is improbable, unconvincing or contrary to human experience, we will not hesitate to reverse a judgment of conviction. (*People v. Dawson,* 22 Ill.2d 260; *People v. Ware,* 23 Ill.2d 59.) It is the contention of the People that the record here presents only a conflict between the testimony of Gondolfo and defendant and that we should abide by the trial court's resolution of such conflict. In our opinion, however, the testimony of the complaining witness is so unconvincing, conflicting and unreasonable that a reasonable doubt of the defendant's guilt must be said to exist.

While we do not doubt that harsh words and perhaps threats were exchanged between the two men, or that defendant was guilty of conduct which is not to be condoned, we cannot say that the evidence in the record satisfactorily or convincingly proves beyond all reasonable doubt that he was guilty of committing a murderous assault with either the gun or the knife. It is beyond human belief that defendant, while presumably engaged in a life or death struggle, would divert his attention from Gondolfo while the latter picked himself up from the ground, went to a tire rack and procured a tire iron, and then returned and struck the defendant down as the latter stood making no effort to protect himself. What resulted is more compatible with defendant's testimony that Gondolfo came up from the floor swinging the tire iron after defendant had sought to protect himself from the gun. Moreover, Gondolfo's testimony that defendant pulled the trigger twice stands refuted by the proof that the trigger was inoperable, whereas his statement that he first struck defendant in the hand with the iron is

made doubtful by the circumstance that defendant suffered no hand injury.

Turning to Gondolfo's version of the attack with a knife, it stands out in bold relief in this record that defendant was lying in the drive in a semi-conscious state when the police arrived and that the knife was later found in his clothing at the hospital. Had defendant been wielding the knife and employing it as a weapon when the gun was taken from the desk, as Gondolfo testified, it taxes credulity that defendant, during the melee that immediately followed, would have had either the opportunity or the inclination to fold the knife and return it to his pocket.

A searching analysis of this record leaves us with the firm and persistent conviction that a reasonable doubt of guilt exists. Accordingly the judgment of the circuit court of Winnebago County is reversed.

*Judgment reversed.*