(No. 42723.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* WILLIE CHARLESTON, Appellant.

*Opinion filed November 17, 1970.*

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago, (NUNZIO TISCI and JAMES J. DOHERTY, Assistant Public Defenders, of counsel) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JOEL M. FLAUM, Assistant Attorney General, and ELMER C. KISSANE and JAMES S. VELDMAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Willie Charleston, was tried before a judge of the circuit court of Cook County upon an indictment which charged him, in separate counts, with armed robbery and attempted rape. He was found guilty "as charged in the indictment" and sentenced to the penitentiary for not less than two nor more than ten years. The appellate court affirmed, but modified the judgment to impose a sentence "for a term of two to ten years on his conviction of the offense of attempt rape and for a term of two to ten years on his conviction of the offense of armed robbery, both sentences to be served concurrently." (115 Ill. App. 2d 190.) We allowed leave to appeal to review the propriety of the action of the appellate court in imposing the additional sentence, and also to determine the sufficiency of the evidence to establish the guilt of the defendant beyond a reasonable doubt.

We find it unnecessary to consider the first issue because we are satisfied that the guilt of the defendant was not established beyond a reasonable doubt. The assault upon the prosecuting witness, which took place about 1:30 A.M., October 13, 1966, was interrupted by an off-duty police officer who heard her screams and fired, first a warning shot and then two shots at the assailant as he fled. But the officer did not see the face of the man at whom he fired and was able only to describe his build and to say that he wore a brown corduroy coat and hat. The brown corduroy coat that the defendant was wearing when he was arrested on October 19, 1966, was received in evidence, and as the ap-

pellate court noted, the trial judge, in finding the defendant guilty, pointed out that the officer "did say that the clothes were the same." It is obvious, however, that the officer could not say that the coat which was in the courtroom was actually the same coat that was worn by the man at whom he fired on Ocober 13. The officer's description of the attacker continued: "And I couldn't possibly say, but I will say glasses. I think afterwards I could tell whether he was wearing glasses." The officer's testimony that the assailant wore glasses is of no value.

The prosecuting witness had adequate opportunity to view her assailant. She had seen him following her before the assault, and she looked directly at his face during the attack. Immediately after the occurrence she told the police officers that he was about 5 feet, 10 inches tall, weighed about 160-165 pounds, was wearing a brown corduroy coat, a dark hat and tinted glasses, and that she would know him if she saw him again. She did not tell them, however, that she had gone to school with her assailant, knew him and his name, and that he was a friend of her husband.

At the trial she identified the defendant as her assailant, and on cross-examination she testified that she had known him for several years, knew his name, and knew him as a friend of her husband. She admitted that she did not mention his name to the police officers on the night of the assault. She was asked, "Did this man have a mustache, if you recall," and she answered, "They didn't ask me about no mustache, and I did not look." She testified that on October 19, 1966, when she brought about the defendant's arrest, she told the police officers his name. But the only officer who testified concerning the events that took place at the time of the defendant's arrest denied that she had told the officers the defendant's name or had stated that she had known him prior to the assault.

The prosecuting witness testified that the defendant was a friend of her husband, but denied that she had ever seen

him with her husband or talking to her husband. She also testified that she had never spoken to the defendant. The defendant, his fiancee and another defense witness testified that in July of 1966 the defendant, his fiancee and the prosecuting witness and her husband had all had drinks together. This testimony was not denied. The complainant's husband did not testify. The defendant and two other young men testified that the three of them had been together from 8:00 P.M. on October 12, to 4:00 or 5:00 A.M. on October 13, and that the defendant had not left the group.

The behavior of the prosecuting witness in concealing the identity of her assailant for almost a week was highly unusual. She explained her failure to give the defendant's name to the police officers on the ground that "I was scared. I figures if he were bold enough to grab me he knew me. He will get me again." That explanation is not consistent with her conduct in identifying the defendant on October 19.

On the whole record we are unable to conclude that the defendant's guilt was established beyond a reasonable doubt. As we said in *People* v. *Reese* (1966), 34 Ill.2d 77, 80: "We attach great weight to the findings of the trier of fact, including his appraisal of the credibility of witnesses, but they are not conclusive and it is our duty to set a conviction aside where the evidence is so unsatisfactory as to raise a reasonable doubt of a defendant's guilt."

The judgments of the trial and appellate courts are reversed.

*Judgments reversed.*

Mr. Justice Ward took no part in the consideration or decision of this case.