THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME McMURRAY, Defendant-Appellant.

(No. 55159; ▮▮▮▮▮▮▮▮

First District—May 30, 1972.

Gerald W. Getty, Public Defender, of Chicago, (James J. Doherty, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Terence J. Mahoney, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Jerome McMurray (defendant) was tried before a jury for attempt murder (Ill. Rev. Stat. 1969, ch. 38, par. 8-4(a)) and also upon three counts of aggravated battery. (Ill. Rev. Stat. 1969, ch. 38, par. 12—4(b) (1).) After a verdict of guilty on all four charges, he was sentenced to the penitentiary for 14 years to 20 years for the attempt and five to ten years for aggravated battery, with the sentences to run concurrently. On appeal to this court, he contends that the evidence failed to prove his guilt beyond a reasonable doubt; that because of undue restriction upon his right of cross-examination he was denied his constitutional right of confrontation of witnesses and that he was deprived of a fair trial by prejudicial closing argument by the prosecutor. These contentions will be considered in order.

The complaining witness was Richard Peck, a Chicago police officer who was assigned to the Gang Intelligence Unit, with his activities

focused upon the group known as the Blackstone Rangers. He testified that on April 9, 1969, he was driving an unmarked automobile in the Woodlawn area on the south side of Chicago. Although dressed in civilian clothes, he was then in performance of his duty. At approximately 4:30 P.M., he was driving south on Woodlawn Avenue near 61st Street. It was a light and sunny day. He saw five or six young men on the street, all wearing red tams as worn by the Rangers and carrying guns. They were in a group of about 25 or 30 persons. The officer knew defendant for about a year and a half and had seen him about 12 times previously. He recognized defendant in the group and noticed that defendant was carrying a sawed-off shotgun or rifle. The officer stopped his car and shouted, "Police Officer." A member of the group discharged his firearm and blew out the left rear window of the automobile. The officer was shot a number of times by the armed members of the group. He saw and identified defendant as one of four persons who was firing at him at the time. Stipulation as to the medical evidence showed that the officer received 15 wounds from shotgun pellets in various portions of his body. He protected himself by getting under the automobile but, when he attempted to leave this shelter, he was shot again. He then saw defendant and other individuals turning to run east through a gangway toward Kimbark Avenue.

The other principal witness for the prosecution was Franklin Jackson, who, previous to his testimony, had been a member of the Blackstone Rangers. He testified that on the date and time in question he and two other teen-age young men, Julius Clayborn and David Cross, were in the vicinity of 61st Street and Kimbark Avenue. He saw defendant, armed with a rifle, having a conversation with a young man named Ronald Davis, who was in possession of a shotgun. Ronald Davis, a codefendant, was separately tried. The witness further testified that Davis and defendant walked west together toward Woodlawn Avenue. He then heard three or four shots and shortly thereafter he saw defendant, armed with the same rifle, come running back in an easterly direction through a lot and a gangway.

Defendant first attacks his identification by the police officer on the ground that it was not made "at the earliest opportunity." Officer Peck was questioned by his superior officers at the hospital. He did not then give them defendant's name or description. While in the hospital, he did identify David Cross, whose name had been mentioned by the other witness, Franklin Jackson. The officer testified that he did not give this information to his superiors because he wanted to make the arrest personally and he thought that he could handle the matter better himself. However, another police officer who worked with the Gang In-

telligence Unit testified that when he interviewed the witness in the hospital, he was quite dazed and unable to have a conversation. This person arrested the defendant approximately at 11:30 P.M. that day.

■■ Upon consideration of all of the evidence, we conclude that the identification by the assaulted officer was sufficiently direct and positive to support the verdict of guilty. The failure of the wounded police officer to name defendant immediately to his superiors may well be justified by his physical condition so soon after the shooting. The record shows that he was placed under sedation at the hospital. For this reason, *People v. Charleston,* 47 Ill.2d 19, 264 N.E.2d 199, cited by defendant, is inapplicable here. In *Charleston,* the complaining witness was not wounded in the occurrence yet she concealed the identity of her assailant for almost a week.

■■ Defendant attacks the testimony of Franklin Jackson, the remaining witness, on the ground that he had a motive to abuse the truth, namely, a desire to escape prosecution. Defendant also urges that Jackson testified that he was with David Cross on Kimbark Avenue when he saw defendant and that Officer Peck placed Cross on Woodlawn Avenue at the time of the shooting. However, Jackson testified that David Cross was with him when he first saw defendant. He did not completely particularize that Cross was beside him when he saw defendant running east after the shooting. This alleged motive and discrepancy were matters for determination by the trier of fact. The credibility of the witnesses was an issue to be determined by the jury. We cannot say that these details were in and of themselves sufficient to create a reasonable doubt of the guilt of defendant.

■■ Defendant offered evidence of an alibi. He testified that he was at the apartment of a friend on the afternoon of the shooting and that he and other friends left the apartment to go to a recreation center where he was and remained at the time of the shooting. Defendant offered certain testimony in support of this alibi. On the other hand, the State brought forward evidence which tended to contradict and discredit the alibi. Also there were certain alleged discrepancies between the testimony of defendant and one of his supporting witnesses. We cannot say that the evidence of alibi was so strong that it sufficed to create a reasonable doubt of guilt. The credibility and effect of the alibi testimony was one for the trier of fact. The jury could, in this instance, reasonably reject the evidence of alibi and conclude that guilt had been proved beyond a reasonable doubt. "The jury was not, of course, obligated to believe * * *" the proffered evidence of alibi. *People v. Ault,* 28 Ill.2d 34, 36, 190 N.E.2d 815.

■■ In such a situation regarding these issues concerning identification

and alibi, "[i]t is axiomatic that it is the function of the trier of the facts to determine the credibility of the witnesses, and its finding of guilty will be disturbed only when the evidence is so unsatisfactory as to leave a reasonable doubt as to defendant's guilt." (*People v. Glover*, 49 Ill.2d 78, 84, 273 N.E.2d 367.) We reject defendant's first contention and hold that the State proved defendant guilty beyond a reasonable doubt.

■■■ We will comment here upon a collateral point raised by defendant. Cross-examination of defendant by the State brought out that he was a member of the Black P. Stones (Blackstone Rangers) since 1960 and that he is an ambassador or chief of a division of that organization in charge of keeping "disturbances down" as a peacemaker in the Kenwood area. No objection was raised to any of these questions at trial. The point, if any, was therefore waived. (*People v. Eubank*, 46 Ill.2d 383, 388, 263 N.E.2d 869; *People v. Longstreet*, 2 Ill.App.3d 556, 558, 276 N.E.2d 825.) Furthermore, in view of the status and particular assignment of the wounded police officer this evidence was relevant and probative. Therefore, even if objection had been timely made, it should not have been excluded even though it might also have a tendency to prejudice the accused. *People v. Hairston*, 46 Ill.2d 348, 372, 263 N.E.2d 840.

■■ During the cross-examination of Franklin Jackson, defendant's counsel asked where he lived at that time. The court sustained an objection by the prosecutor and ruled that the evidence was immaterial. From the factual background revealed by this record, one can readily and reasonably surmise that disclosure of the home address of the witness may well have created a real and imminent danger to his safety. The prosecution filed a list of witnesses prior to trial but Franklin Jackson's name was not included. Defendant contends that these factors deprived him of his right of confrontation of the witnesses against him as guaranteed by the Sixth Amendment of the United States Constitution. This same point was raised in *People v. Durley*, (Ill.App.2d), 272 N.E.2d 725, decided by this court on May 10, 1971. We held there, in a case involving sale of narcotics, that where defendant was denied the right to obtain the address of the informer on cross-examination this was not error and did not constitute a denial of the right of confrontation because the record showed that defendant actually had exercised a fair and adequate opportunity for effective cross-examination. In that case, we elected not to rely on decisions such as *People v. Dunams*, 118 Ill. App.2d 76, 254 N.E.2d 582 cited by the defendant in the case at bar, and *Smith v. Illinois*, 390 U.S. 129, 19 L.Ed.2d 956, 88 S.Ct. 748. Instead, we relied upon *United States v. Lee* (7th cir. 1969), 413 F.2d 910; *United States v. Lawler* (7th cir. 1969), 413 F.2d 622 and *United States v.*

*Teller* (7th cir. 1969), 412 F.2d 374, *cert.* denied, 402 U.S. 949. Our decision in *Durley* was affirmed by the Supreme Court of Illinois, Docket No. 44490, opinion filed May 22, 1972, 51 Ill.2d 590. The record here shows, as in *Durley,* that defendant did exercise a full and adequate right to cross-examine this witness for the prosecution. This contention of defendant is rejected.

The final contention of defendant relates to closing argument by the prosecutor. Neither the argument of counsel for the State nor for the defendant was completely within the bounds of propriety. Counsel for defendant stated his opinion to the jury when he said that he did not know whether or not the defendant was guilty. He also said that he did not believe that the State had met its burden of proof. In answering this argument, the State's Attorney told the jury that this was improper and that the opinion of either counsel did not make a bit of difference. He then stated that he had known the complaining witness for five years and never had known him to lie but that it was not proper for him to make this statement because his opinion made no difference. It was not proper for either counsel to state his opinion to the jury in this manner. See *People v. Fuerback,* 66 Ill.App.2d 452, 456, 214 N.E.2d 330.

■■■ We do not mean to condone this type of performance by members of the bar. Counsel for the prosecution and for the defense should always remain aware of their duty to the court and to each other to abstain from unfair and improper argument. However, under the particular circumstances of this case, we conclude that no prejudicial error is present for these reasons. "It is well settled that whenever the argument of defense counsel invites or provokes a response on the part of the prosecutor, defendant then cannot complain that he has been prejudiced by such response." (*People v. Reyes,* 131 Ill.App.2d 134, 266 N.E.2d 539, 544.) In addition there is no showing in this record of substantial prejudice to the defendant as a result of the entire series of arguments made by all counsel. (See *People v. Acker,* 127 Ill.App.2d 283, 296, 262 N.E.2d 247 and *People v. Trice,* 127 Ill.App.2d 310, 319, 262 N.E.2d 276.) This is particularly true in the case at bar in view of the clear and strong evidence of guilt. See *People v. Nicholls,* 42 Ill.2d 91, 245 N.E.2d 771.

The judgments and sentences appealed from are affirmed.

Judgments affirmed.

BURKE and LYONS, JJ., concur.