THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL PETER POLTROCK, Defendant-Appellant.

(Nos. 58663-5 cons.; ■■■■■■■■■■■■)

First District (3rd Division)—March 21, 1974.

William D. Klink and Val R. Klink, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and John Cutrone, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Michael Poltrock was convicted in a trial without a jury of three charges of battery (Ill. Rev. Stat. 1969, ch. 38, par. 12—3), and was sentenced to serve three concurrent 30-day terms in the House of Correction.

Poltrock contends that the judgment should be reversed because the evidence did not establish his guilt beyond a reasonable doubt, and that his prosecution as an adult pursuant to classification by the Juvenile Court Act then in effect (Ill. Rev. Stat. 1969, ch. 37, par. 702—2), denied his constitutional right to the equal protection of the law. Be-

cause of our disposition of his first contention, it is not necessary to address his second.

The battery charges were the outgrowth of an altercation among five youths on August 1, 1971. The complainants, Peter Berg, Robert Rucker and Rick Hansen were on one side, and Poltrock and a friend of his were on the other. The altercation took place about midnight in front of Peter Berg's home, which was one-half block from Wrightwood Park. Berg, Rucker and Hansen were sitting on the stairs in front of Berg's house when they heard a scream coming from the park. They went to investigate. As they approached the entrance to the park, they saw a group of young men leaving. They returned to Berg's house and two of the group, Poltrock and another, followed them. After a long argument, they began to fight.

From this point on the testimony of the three complainants differed markedly. Berg testified that he received the first blow; that Poltrock knocked his head against the porch and he became unconscious. However, 1 week before the trial he said he did not know who hit him. Rucker testified he was struck first, that Poltrock hit him in the face with his fist. He reflexively closed his eyes and reeled back, and when he opened them he saw Berg going down and Hansen backing away. Hansen testified that the fight began with Poltrock slapping him around. Poltrock then hit Berg, and after that he and Rucker "dealt" with Poltrock. At another point in his testimony, Hansen said that Poltrock and his friend came at him and that Poltrock kicked him in the forehead. After this, he attempted to strike Poltrock, but the scuffle ended quickly when Berg's sister and father came out of the house. He also said that he and Rucker fought with Poltrock, but he could not remember being struck.

Michael Poltrock testified that he and some friends were talking in Wrightwood Park when the complainants drove up in an auto. They got out of the car, took some jacks and wrenches from the trunk, and shouted obscenities at the group in the park. When some members of the group moved toward them, the complainants threw the "weapons" back into the trunk and drove away. Poltrock's testimony as to the events in the park was corroborated by Gary Schlapinski who was one of those in the park. He said a car pulled up on the street and the three complainants emerged; they snatched metal objects from the trunk and swore at him and those with him. They did not come into the park so nothing came of the incident. When the group broke up about 12:30 A.M., he accompanied Poltrock as far as the park gate; he went his own way and Poltrock his.

When he left the park, Poltrock and a friend of his named Berk Mc-

Graw walked to Berg's house. Poltrock lived a block away from Berg. He acknowledged that he did not have to walk past Berg's house on his way home from the park, but he said he went there to talk to the complainants and that he never got closer to them than was necessary to carry on a conversation. He said he asked them, "What were you doing swearing at us and taking out weapons?" The complainants answered that they believed someone was getting "beat up." Poltrock replied that no one had been beaten, and continued questioning them. The conversation escalated into an argument. He next observed Berg and McGraw wrestling on the ground and then Rucker and Hansen lunged at him. He denied hitting either of them or Berg, and stated he did not see McGraw strike anyone.

On the subjects of the car, the weapons and going to the park, the complainants again contradicted each other. Rucker's car was parked in front of Berg's house. Rucker denied driving around that night, stopping at the park or removing any objects from the trunk. On the other hand, Hansen testified that they had ridden around in Rucker's car. Berg testified that when Rucker and Hansen walked to the park they carried something in their hands. Hansen admitted that he removed a bumper jack from the car's trunk, but he said he did this in front of Berg's home and returned it to the trunk before Poltrock came by. Rucker said the three of them went to the park. Hansen said he remained near Rucker's car while the others went there. Berg said it was he who did not go, that he stayed near an alley and watched Hansen and Rucker go.

Although the complainants did not know McGraw two of them knew Poltrock, but no complaint was signed against him until July 1, 1972, 11 months after the alleged batteries. When questioned about the delay, Rucker said he went to a police station the night of the fracas and he believed a warrant was issued, but he saw Poltrock in the neighborhood the next day and did not notify the police. Berg testified that he did not know Poltrock's address, but he admitted seeing him in the neighborhood several times between the night of the fight and the date of his arrest. Hansen said that he talked to the police the same night and that on a later day he aided them in searching for Poltrock.

■■ The trial court ruled that the testimonial discrepancies in the stories told by the complainants did not destroy their credibility. In reviewing a conviction in a non-jury trial, appellate courts attach great weight to the findings made by the trier of fact, including his appraisal of the credibility of witnesses. But his findings are not conclusive, and it is this court's duty to set aside a conviction where the evidence is so unsatisfactory that it leaves a reasonable doubt of the defendant's guilt. *People v. Charleston* (1970), 47 Ill.2d 19, 264 N.E.2d 199.

We have such doubts in this case. We do not share the trial court's confidence in the complainants' testimony; rather, we believe the cumulative effect of the contradictions within and between their stories raises a reasonable doubt of the defendant's guilt. We find it unbelievable that Poltrock simultaneously attacked three opponents and struck them in such rapid succession that each one thought he was the first one hit. We also find unbelievable the complainants' assertions that only Poltrock landed any blows. Their full account of what happened, in a scuffle involving presumably healthy youths of high school age, is highly improbable. Where the evidence of the prosecution is improbable, unconvincing or contrary to human experience, a reviewing court will not hesitate to reverse a judgment of conviction. *People v. Stevenson* (1962), 25 Ill.2d 361, 185 N.E.2d 199.

In searching the record, the only credible evidence we could find bearing on the intention needed to support the findings of guilt (Ill. Rev. Stat. 1969, ch. 38, par. 12—3) was the undisputed fact that Poltrock went to Berg's home. But this does not prove that he went there with the intention of committing a battery, nor does it necessarily prove that he was the aggressor. He knew where Berg lived and must have recognized him at the park. He went to inquire why they were bellicose to him and his friends. If he were the aggressor, he was a foolhardy one: he approached and confronted three persons who could have been armed or who, he knew, had weapons available. Outside of the testimony of the complainants, which we cannot accept, there is no evidence that Poltrock was the aggressor or that he inflicted batteries upon them intentionally.

The trial court placed special reliance, when entering the findings of guilt, on the defendant's own testimony. The testimony was not implausible, and indeed was partially corroborated by another defense witness. Apart from that, the fact that the judge may have disbelieved the defendant's denials cannot rehabilitate flagrant inconsistencies in the complainants' testimony. Criminal convictions must rest on the strength of the State's case and not on the weakness of the defendants'. (*People v. Carroll* (1970), 119 Ill.App.2d 314, 256 N.E.2d 153.) There are simply too many flaws in the fabric woven by the complainants' testimony for it to bear the weight of our doubts, and its untrustworthiness cannot be redeemed by pointing to the frailty of the defendant's case.

■■ Finally, while it is not directly related to the altercation, we find it difficult to understand the slow course of events leading to Poltrock's arrest. Complaints were not signed until a full 11 months had elapsed after the fight. Although this may have been due in part, as Rucker

hypothesized, to slowness of the police to act, nevertheless the complainants' own inattention to the matter over so long a time cannot help but cast doubt upon their personal confidence in their accusations. Poltrock was no stranger to them. Two of the complainants encountered him after the fracas, one of them the very next day, but neither notified the police, at a time when their indignation over the purported assault would have been at its highest.

The judgment of conviction on all three battery charges will be reversed.

Reversed.

McNAMARA, P. J., and McGLOON, J., concur.