*In re* FRANK GONZALEZ *et al.*, Minors.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v*. FRANK GONZALEZ *et al.*, Respondents-Appellants.)

First District (3rd Division)    No. 79-2222

Opinion filed April 29, 1981.

Harris & Goldstein, of Chicago (David L. Goldstein, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard Burke, and Barry A. Gross, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WHITE delivered the opinion of the court:

Respondents Frank and Juan Gonzalez were charged in separate Juvenile Court delinquency petitions with the offense of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2)). Following trial, the court found respondents delinquent, adjudged them wards of the court and after a dispositional hearing, committed them to the Juvenile Division of the Illinois Department of Corrections. On appeal, respondents contend that: (1) the evidence fell short of proof beyond a reasonable doubt, and was insufficient to sustain a finding of delinquency because testimony of the State's witnesses was confusing, inconsistent and incredible; (2) the evidence as to respondent Frank Gonzalez was insufficient to sustain a finding of delinquency on the theory of accountability; (3) it was plain error for the trial court to admit hearsay evidence regarding a prior arrest of respondent Juan; and (4) the trial court erred in permitting the State to introduce the rebuttal testimony of Laura Williams since her name had not previously been given to respondents.

On February 28, 1979, Fellipe Baez died as the result of a gunshot wound in the back. Facts adduced at trial regarding the shooting can be summarized as follows. At approximately 8:30 p.m. on that date, a group of teenagers stood talking in front of an apartment building located near Armitage and Humboldt Avenues in Chicago. Although the exact number in the group is unclear, it appears that State's witnesses Robert Killian, Carrie Blake, and Miguel Gola were among the group. At least some of these youths were affiliated with a gang called the "G.B.O." or "Ghetto Brothers Organization." The group was approached by three youths, including respondent Frank Gonzalez, who yelled, "Y.L.O." which meant "Young Latin Organization." After giving the Y.L.O. yell, respondent

Frank and his companions left the area but returned 10 minutes later and gave the yell again. This was considered a challenge by the G.B.O., so they began chasing the Y.L.O. despite the warning of Carrie Blake that it was probably a "set up." They chased the Y.L.O. into a nearby alley. It was here that Fellipe Baez was shot.

The witnesses' testimony differed as to the number of street lights which were operating in the alley on that evening; however, they all testified to having seen respondent Juan Gonzalez enter the alley carrying a rifle and stated that they had known both respondents prior to the incident because they all attended the Yates school. State witness Robert Killian testified that he saw respondent Juan enter the alley with a rifle and begin firing as his brother, respondent Frank, stood beside him and watched. Robert said he and his friend, George, hit the ground when the shots were fired. When he got back to his feet, he saw Juan reload and fire again. After the second shot was fired, Fellipe Baez, who had been standing in the alley yelling, "G.B.O. Love," was struck. Witness Miguel Gola also testified that he saw Juan in the alley with a gun, that he heard the shots and the cries of Baez and that Frank stood next to his brother Juan during the shooting. Several witnesses testified to having heard the deceased yell, "I'm shot, I'm shot." State's witness Edwin Rosario testified that he had been hiding under his back porch located near the alley, when the shots rang out. Rosario stated that when the shooting stopped he looked down the alley and observed Juan running with what "looked like a rifle."

The exact number of shots which were fired in the alley is in dispute. It appears that there were several. Witness Killian testified to hearing two shots from the rifle and then about eight more which sounded like they came from an automatic weapon. Witness Blake claims to have initially heard three rifle shots followed by some firing from what sounded like an automatic pistol, and witness Gola reportedly heard some 24 or 25 shots in total. However, respondent Juan Gonzalez was the only person seen in the alley with a gun. Three cartridge cases were later found in the alley by Chicago Police Officer Dennis Lesniak.

Witness Killian testified that he went to seek help following the shooting. He located Police Officer Michael Mulvihill on Humboldt and informed him of the incident. While directing the officer to the site of the shooting, Killian told him that Moses Santiago had been involved. Killian on the following day, however, told the police that the respondents had been involved in the killing of Fellipe Baez. Killian testified at trial that he had given the name Santiago to Officer Mulvihill on the day of the shooting because he was afraid of the respondents' older brother who frequented his neighborhood. According to Officer Mulvihill, he spoke

with Killian for only two or three minutes, and observed that Killian appeared to be "very nervous" after the shooting.

Respondent Juan Gonzalez testified on his own behalf that on the evening of the shooting he arrived home at about five o'clock and there he remained for the rest of the evening. Juan stated that he knew State's witnesses Carrie Blake and Edwin Rosario but denied knowing Robert Killian and Miguel Gola. Juan admitted belonging to the Y.L.O. gang four years ago but stated that at the time of the incident he was no longer a member.

Respondent Frank Gonzalez also denied any participation in the incident leading to Fellipe Baez's death. Frank stated that at one time he had belonged to the Y.L.O. gang and that he had seen Killian, Blake, Gola and Rosario before, but did not know them well.

The respondents' mother, Gloria Rodriguez, testified that on the day of the shooting, she arrived home between 5 and 5:30 p.m. She stated that both respondents were home at this time and that she asked them to stay in because she had heard earlier of some trouble in the neighborhood. Mrs. Rodriguez testified that she went to bed at about 7 or 8 p.m. in the front room of the house, but that she remained awake throughout the night. Mrs. Rodriguez stated that her sons were at home all night until police officers arrived.

The defense also presented testimony by two character witnesses who were both affiliated with the Inner City Impact Organization. Their testimony revealed essentially that they had no knowledge of either respondents' affiliation with any neighborhood gangs.

The State then called two rebuttal witnesses. Chicago Police Investigator Neil Sullivan testified that the respondents' mother had informed him on March 1, 1979, that she had gone to bed at 6 p.m. on the night of the shooting. Sullivan further testified that he was aware of respondent Juan's bad reputation in the community from his experience in the gang crimes unit of the police department. He also stated, without objection, that he had personal knowledge from his office files that Juan had been arrested before.

The State's final rebuttal witness was Laura Williams, a teenager in the respondents' neighborhood. The Assistant State's Attorney had informed the court during the course of the trial of his desire to call a female witness on rebuttal. However, Williams' name was not submitted to the court on that day, nor had it been included in the list of witnesses prepared prior to trial. We note in addition that respondents did not object to her testimony at trial. Williams testified that she knew the respondents and had seen them both on Humboldt Avenue at about 8 p.m. on February 28, 1979, when she was standing with some of the

G.B.O. members in front of the apartment building on Humboldt. She further testified that she had observed the respondents earlier in the evening yelling, "Y.L.O.'s and Disciples and Cobras." Williams stated that both respondents had belonged to the Y.L.O. gang during the summer of 1978.

Both respondents were found delinquent by the trial judge and committed to the Juvenile Division of the Illinois Department of Corrections. This appeal followed.

## I

Respondents claim that the evidence was insufficient to sustain a finding of delinquency because the testimony of the State's witnesses was confusing, inconsistent, and incredible and failed to prove the charge beyond a reasonable doubt. In support of this contention respondents argue that the testimony of the State's witnesses differed as to the names of the youths who were on Humboldt Avenue yelling, "Y.L.O." on the evening of February 28, 1979; that the witnesses' testimony was inconsistent as to the number of lights which were operating on the street and in the alley on the night of the shooting; that there were irreconcilable differences in the State's evidence with regard to the type of gun that respondent Juan carried and the number of shots fired; and that there were inconsistencies in the testimony of the State's witnesses regarding the presence of respondent Frank in the alley.

Where a charge of delinquency is based upon a criminal offense, the applicable standard of proof is beyond a reasonable doubt (Ill. Rev. Stat. 1979, ch. 37, par. 704—6; *In re Forrest* (1973), 12 Ill. App. 3d 250, 298 N.E.2d 197). A reviewing court will not reverse a conviction based upon the weight of the evidence or the credibility of the witnesses unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631, 634; *People v. Spaulding* (1979), 68 Ill. App. 3d 663, 386 N.E.2d 469, *cert. denied* (1979), 444 U.S. 929, 62 L. Ed. 2d 186, 100 S. Ct. 271.) However, where the evidence of the prosecution is improbable, inconsistent or contrary to human experience, a reviewing court will not hesitate to reverse. (*People v. Stevenson* (1962), 25 Ill. 2d 36, 185 N.E.2d 199; *People v. Poltrock* (1974), 18 Ill. App. 3d 847, 310 N.E.2d 770.) The appellate court found such reasonable doubt in *Poltrock*, where it stated that it was unbelievable that the defendant could simultaneously strike three opponents in such rapid succession that each thought he was the first one hit or as the prosecution urged, that only the defendant would manage to land any blows while engaged in a scuffle with three youths of

his same age. Similarly, in *Stevenson* the court found it beyond human belief that the defendant "while presumably engaged in a life-or-death struggle would divert his attention from his aggressor while the latter picked himself up from the ground, procured a tire iron from a tire rack and struck the defendant down while the defendant made no effort to defend himself." Unlike the situations in *Stevenson* and *Poltrock*, the evidence as presented in the instant appeal is not improbable or contrary to human experience.

Admittedly, there are some discrepancies in the testimony of the State's witnesses. However, that testimony is believable and consistent on all material matters relating to the offense. The law is clear that the identification testimony of a single credible witness is sufficient to support a conviction (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666; *People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631), and that the identification is strengthened to the extent the witness had any prior acquaintance with the accused (*People v. Horobecki* (1977), 48 Ill. App. 3d 598, 363 N.E.2d 1). Here, four State's witnesses, Carrie, Miguel, Edwin and Robert, who had previously known the respondents, testified to having seen respondent Juan with a rifle. One witness, Robert Killian, saw Juan fire the gun at the time Fellipe Baez was struck. In light of this proof, the contradictions in the testimony of the State's witnesses as to persons present at the shooting, and the number of shots fired were matters collateral to the offense. (*People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.) We find these discrepancies insufficient to reverse. The positive credible testimony of witnesses Carrie, Miguel, Edwin and Robert was sufficient to prove beyond a reasonable doubt that respondents committed the murder of Fellipe Baez.

## II

■■ The respondents next argue that the evidence at trial was insufficient to sustain a finding of delinquency beyond a reasonable doubt under an accountability theory as to respondent Frank Gonzalez. We disagree. In order to prove accountability under section 5—2(c) of the Criminal Code of 1977 (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c)), the State must prove that the accused, " 'solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offenses * * * this participation must have taken place either before or during the commission of the offenses; and * * * must have been with the concurrent, specific intent to promote or facilitate the commission of the offenses.' " (*People v. Owens* (1975), 32 Ill. App. 3d 893, 895, 337 N.E.2d 60; *People v. Ramirez* (1968), 93 Ill. App. 2d 404, 236 N.E.2d 284.) Mere presence or negative acquiescence is not enough to constitute being a principal, but where a common design or assent is shown, a conviction will be upheld. *People v. Tate* (1976), 63 Ill. 2d 105, 345 N.E.2d 480.

The facts here closely parallel those in *People v. Hughes* (1962), 26 Ill. 2d 114, 185 N.E.2d 834, wherein defendant was affiliated with a street gang called the "Vice Lords." The group had embarked upon a search for a rival gang when one of its members armed himself with a sawed-off shotgun so as to be prepared for any trouble which might later arise. During the course of the search, three shots were fired at two men in an alley and one man was killed. Although from the evidence at trial it was unclear which of the Vice Lords actually carried and fired the weapon, the defendant was held legally accountable for the shooting. The *Hughes* court stated:

> "Where one attaches himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, he becomes criminally liable for any wrongdoings committed by other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof, even though he did not actually participate in the overt act itself." 26 Ill. 2d 114, 119-20.

■■ ■ In the instant case there was evidence that respondent Frank not only lured the G.B.O. members into the alley immediately preceding the shooting but also stood next to his brother and watched as the gun was fired. Clearly, this behavior would support a conclusion that a common plan or design existed between the Gonzalez brothers. Thus the trial judge was justified in finding respondent Frank Gonzalez legally accountable for the death of Fellipe Baez. As long as a person is shown to have been " '* * * present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval, and was thereby aiding and abetting in the crime. * * * ' " *People v. Jenkins* (1980), 88 Ill. App. 3d 160, 164, 410 N.E.2d 418.

### III

■■ We next consider the respondents' claim that it was error for the trial judge to admit into evidence the hearsay statement by Investigator Sullivan that he knew from police documents that respondent Juan had been previously arrested. Respondents failed to raise this issue at trial or in a post-trial motion. As was established in *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239, "error must be preserved either by objection at the proper time, or by filing of a post-trial motion." Although no post-trial motion is necessary in a bench trial (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 515, 170 N.E.2d 569; *Eckerty v. Lowman* (1974), 16

Ill. App. 3d 373, 375, 306 N.E.2d 356), error must nonetheless be somehow brought to the attention of the trial court so that the court might have an opportunity to correct itself or to correct the error involved. *People v. Long* (1968), 39 Ill. 2d 40, 233 N.E.2d 389.

■■ Respondents contend, however, that the issue is not waived as it falls within the purview of the plain-error rule. (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).) Supreme Court Rule 615(a) provides that "errors affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Under the circumstances of this case, we find that the error, if any, in the admission of this testimony was harmless. The test for harmlessness is whether the appellate court is able to declare a belief that it was harmless beyond a reasonable doubt. (*People v. Gan* (1979), 75 Ill. App. 3d 72, 76-77, 394 N.E.2d 611; *People v. Bascomb* (1979), 74 Ill. App. 3d 392, 392 N.E.2d 1130; *People v. Rehbein* (1977), 54 Ill. App. 3d 93, 369 N.E.2d 190.) Evidence of the respondents' prior arrest will not per se constitute grounds for reversal; such an error may be considered harmless where the evidence shows that the defendant is guilty beyond a reasonable doubt. *People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063.

Apart from Investigator Sullivan's testimony, the evidence of the State was sufficient to prove delinquency beyond a reasonable doubt. We therefore believe the trial court's finding was made independent of Investigator Sullivan's statement. Any error which may have been committed by the introduction of this testimony was harmless beyond a reasonable doubt. *People v. Gill* (1973), 54 Ill. 2d 357, 297 N.E.2d 135, *cert. denied* (1974), 414 U.S. 1144, 39 L. Ed. 2d 100, 94 S. Ct. 897; *People v. DeCarlis* (1980), 88 Ill. App. 3d 634, 410 N.E.2d 677.

### IV

The respondents' final contention is that the trial court erred in allowing the prosecution to introduce the rebuttal testimony of Laura Williams.

The State called Williams to rebut the respondents' testimony that they were not members of the Y.L.O. and that they were at home on the night Fellipe Baez was slain. Williams testified that the respondents had been introduced to her as members of the Y.L.O. during the summer preceding the incident. She also testified that she had observed both respondents yelling, "Y.L.O." and "Disciples and Cobras" on the evening of the shooting.

■■ Williams' name was not included on the list of witnesses furnished by the State prior to trial nor disclosed prior to her taking the stand. Consequently, respondents argue that they were surprised by her testimony and suffered substantial prejudice as a result. Respondents did not

raise this issue through objection at trial or in a post-trial motion. As stated above, the failure to either object at trial or to file a post-trial motion constitutes a waiver of the error now raised on appeal (*People v. Pickett* (1973), 54 Ill. 2d 280, 310 N.E.2d 856; *People v. Guynn* (1975), 33 Ill. App. 3d 736), unless a substantial right of the defendant is affected such that it constitutes plain error. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) The general rule in Illinois is that the State's obligation to furnish a list of intended witnesses does not apply to rebuttal witnesses. (*People v. Porter* (1973), 13 Ill. App. 3d 893, 300 N.E.2d 814.) Respondents rely on *People v. Manley* (1974), 19 Ill. App. 3d 365, 311 N.E.2d 593, however, in support of their argument that the State was under an obligation to disclose Williams' name once the intent to call her as a witness had been formed. In *Manley* the court held that the identity of an intended witness should fall within the prosecutor's continuing obligation of disclosure under Supreme Court Rule 415(b) (Ill. Rev. Stat. 1971, ch. 110A, par. 415(b)).

The facts in *Manley* differ significantly from those in the instant case. *Manley* involved an appeal from a contempt order issued against the State's Attorney of Du Page County for failure to comply with a trial court's pretrial discovery order. The trial court had ordered the State to produce the names of all witnesses that it intended to call during any stage of the trial. Although the State's Attorney was aware before trial of an alleged admission by the defendant and consequently of the need to call a particular witness on rebuttal, he refused to disclose the witness' name. The court there stated:

"* * * [O]nce the intent is formed to call a witness or utilize his statement, the identity of the relevant witness and his statement should fall within the prosecutor's continuing obligation of disclosure under Supreme Court Rule 415(b) (Ill. Rev. Stat. 1971, ch. 110A, par. 415(b)). *If the intention to call a witness is formed at trial the court should exercise its discretion to extend to the defense every reasonable safeguard to preclude surprise in the conduct of the trial.*" (Emphasis added.)

As indicated by the court in *Manley*, the purpose for imposing a continuing obligation of disclosure on the prosecution is to avoid unnecessary surprise to the defense during the course of trial. Here the State substantially complied with its obligation under *Manley*, when the prosecutor announced on the Friday before the close of trial his intention to call a female rebuttal witness on the following Monday. Apparently, the intention to call her was formed only after the prosecutor heard the respondents' testimony regarding their affiliation with the "Y.L.O." and their whereabouts on the night of the shooting. Respondents made no inquiry at that time regarding the identity of this witness, nor did they

object to the admission of her testimony. Furthermore, the issue was not raised through a post-trial motion. The respondents contend in their brief that they "had to be surprised" by Williams' testimony as they had earlier denied involvement in the "Y.L.O." and had also stated that they were home on the night of the incident. We do not agree. Had the respondents been surprised or believed they were otherwise prejudiced by the State's decision to offer the unnamed rebuttal witness, then they could have raised an objection to the admission of Williams' testimony with the trial court. At that time it would have been the responsibility of the court to determine ways to alleviate the causes of the respondents' prejudice if any existed. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77.) However, under these circumstances, there is no evidence to support a finding by this court that respondents were "surprised" by the calling of a rebuttal witness. Accordingly, we find no plain error in the admission of Williams' testimony, and therefore, this issue is waived.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.