2024 IL App (1st) 220666-U
Order filed April 25, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-0666

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. YH107639 |
| | ) | |
| DONALD T. BUTLER, | ) | Honorable |
| | ) | Steven Kozicki, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse defendant's conviction for speeding as the evidence was insufficient to prove him guilty beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Donald T. Butler was found guilty of speeding and ordered to pay $256 in fines and court costs. On appeal, defendant argues that the State failed to prove he was driving at a speed greater than the maximum speed limit. We reverse.

¶ 3 On February 4, 2022, defendant was issued a citation for "Speeding 1-20 MPH Over Posted Limit (Off Ramp)" in violation of section 11-601(b) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-601(b) (West 2022)).

¶ 4 The record on appeal includes a common law record but no report of proceedings. The parties filed an agreed statement of facts pursuant to Illinois Supreme Court Rule 323(d) (eff. July 1, 2017) in lieu of the report of proceedings. The trial evidence set forth below was taken from the agreed statement of facts.

¶ 5 At trial, Cook County Sheriff's police officer Wilfrido Trejo testified that at approximately 6:05 a.m. on February 4, 2022, he was traveling eastbound on Interstate 90 in the far-right lane preparing to enter the exit ramp onto Arlington Heights Road (exit ramp). Trejo noticed a Tesla, later determined to be driven by defendant, come up behind him in the far-right lane. The far-right lane was an exit only lane, which must exit to Arlington Heights Road and was an extension of the exit ramp.

¶ 6 Trejo testified defendant made a lane change to the left of Trejo's police vehicle, passed Trejo's vehicle, "and re-entered the far-right lane before taking the exit ramp." When defendant passed him, Trejo was driving 55 miles per hour, and defendant was "[traveling] much faster than he was." The far-right lane "had a special posted maximum speed limit of 65 miles per hour and *** [defendant] violated that limit as he passed" Trejo.

¶ 7 Trejo "did not give any testimony" regarding defendant's actual speed in the far-right exit only lane or regarding defendant's speed on the exit ramp. Trejo effectuated a traffic stop of defendant's vehicle on the exit ramp and issued defendant a ticket for "Speeding 1-20 MPH Over Posted Limit (Off Ramp)." Trejo "did not give any testimony" about how he determined defendant

was speeding, regarding the pacing of defendant's vehicle, or the use of any special equipment to determine the speed of defendant's vehicle.

¶ 8    Defendant testified he was traveling behind Trejo in the far-right lane eastbound on Interstate 90 when he observed Trejo's vehicle "slow down dramatically." Defendant decided to pass Trejo before taking the exit ramp since the far-right lane was very lengthy before ending at the exit ramp. When he noticed Trejo's vehicle slow down, he "legally passed" Trejo's vehicle to the left and merged back into the far-right lane before taking the exit ramp.

¶ 9    Defendant further testified "there was no 65 mile per hour maximum speed limit for the exit only lane contrary to what Officer Trejo testified to," and the only posted maximum speed limit for all lanes of travel for passenger vehicles in the area in which they were traveling was 70 miles per hour. Defendant testified that at "no point did he violate the 70 mile per hour maximum speed limit on Interstate 90."

¶ 10    On cross-examination, defendant testified he did not know how fast he was driving on the exit ramp. Defendant testified there was a yellow sign with a suggested maximum safe speed for the exit ramp of 35 miles per hour, but in his research of the applicable laws, a suggested maximum safe speed was not a posted speed limit for purposes of the statute he was charged with violating. Defendant testified Trejo initiated his overhead lights to effectuate a traffic stop on defendant's vehicle right after defendant passed Trejo's vehicle while they were both still traveling in the far-right exit only lane before they entered the exit ramp.

¶ 11    Defendant introduced videos captured by his vehicle, which were admitted into evidence. According to the agreed statement of facts, one video showed defendant passing Trejo's police vehicle. Another video from the rear of defendant's vehicle showed Trejo's police vehicle "in the

distance," Trejo initiating his traffic lights prior to entering the exit ramp, and Trejo having to "travel for some time to catch up" to defendant's vehicle.

¶ 12    The videos are included in the record on appeal. In the video footage, we observe Trejo's vehicle in front of defendant's vehicle in the far-right lane. Arlington Heights Road exit only signs are visible above that traffic lane. Defendant's vehicle enters the lane immediately to the left of the far-right lane, passes Trejo's vehicle at a fast speed, and re-enters the far-right lane around the five second mark. Trejo's vehicle is in the distance behind defendant. Trejo initiates his lights after defendant's vehicle re-enters the far-right lane around the eight second mark. As defendant's vehicle continues to drive in the far-right lane toward the exit ramp, the distance between his vehicle and Trejo's vehicle increases. Around the 30 second mark, defendant slows down after exiting onto the exit ramp and pulls his vehicle over around the 34 second mark. Trejo's vehicle approaches defendant's stopped vehicle around the 40 second mark.

¶ 13    The agreed statement of facts summarizes the trial court's findings as follows:

"After hearing the above evidence, the trial court found [defendant] guilty of violating 625 ILCS 5/11-601(b). The trial court mentioned that the video is what convicted [defendant] because it showed that he passed Officer Trejo 'going pretty fast.' The [c]ourt opined several times that [defendant] passed by Officer Trejo's vehicle as if Officer Trejo's vehicle was standing still. The court also mentioned during its decision that, as it relates to the video showing Officer Trejo turning his lights on before the exit ramp, an [o]fficer should not have to wait until the violation occurs to stop a vehicle if he sees it is going to happen."

¶ 14     According to the agreed statement of facts, the trial court "sentenced [defendant] to a conviction" and ordered him to pay $256 in fines and court costs. Defendant filed a motion to reconsider, which the trial court denied.

¶ 15     On appeal, defendant challenges the sufficiency of the evidence establishing he was driving at a speed greater than the maximum speed limit. He contends the factual discrepancy regarding whether the applicable speed limit was 65 miles per hour as testified by Officer Trejo or 70 miles per hour as defendant testified is largely irrelevant as Trejo's testimony was insufficient to establish defendant was violating any speed limit. Defendant points to the parties' agreed statement of facts, which reflects that Trejo gave no testimony regarding how he determined defendant was speeding or regarding the pacing of defendant's vehicle, and that the only evidence regarding the speed of any vehicle was Trejo's testimony that he was traveling 55 miles per hour and defendant passed him "[traveling] much faster."

¶ 16     In considering a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69. We will not substitute our judgment for that of the trier of fact, who is responsible for assessing the credibility of witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences and conclusions from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). "The testimony

of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." *People v. Gray*, 2017 IL 120958, ¶ 36.

¶ 17    The trier of fact need not "disregard inferences that flow normally from the evidence before it," or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). A conviction will not be set aside unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 18    To prove defendant guilty of speeding under section 11-601(b) of the Code, the State needed to prove beyond a reasonable doubt that defendant drove his vehicle "upon any highway of this State at a speed which is greater than the applicable statutory maximum speed limit." 625 ILCS 5/11-601(b) (West 2022). Defendant only contests the evidence establishing he drove his vehicle at a speed greater than the applicable statutory maximum speed limit. Viewing the evidence in the light most favorable to the State, we find the State failed to satisfy this element of the offense.

¶ 19    Trejo testified he was driving on Interstate 90 in the far-right exit only lane leading to the exit ramp onto Arlington Heights Road when he saw defendant's Tesla come up behind him in the lane. Defendant changed to the lane to Trejo's left, passed Trejo, and re-entered the far-right lane before taking the exit ramp. Trejo was driving 55 miles per hour, preparing to enter the exit ramp, when defendant passed him "[traveling] much faster" than Trejo was. Trejo elaborated that a special posted maximum speed limit of 65 miles per hour applied to the far-right lane and defendant "violated that limit as he passed" Trejo's vehicle.

¶ 20    A defendant's speed may be proven by radar gun, stopwatch, pacing the defendant's vehicle, or an officer's direct testimony. *People v. Lipscomb*, 2013 IL App (1st) 120530, ¶ 7. All we have here is Trejo's testimony that he was driving 55 miles per hour when defendant passed him and that, as defendant passed, he violated the 65 mile per hour speed limit applicable to the far-right lane in which Trejo traveled. Pursuant to the parties' agreed statement of facts, Trejo gave no testimony regarding defendant's actual speed in the far-right lane, defendant's speed on the off ramp for Arlington Heights Road, how Trejo determined defendant was driving above the speed limit, the pacing of defendant's vehicle, or the use of any special equipment to determine defendant's speed.

¶ 21    An officer's testimony alone has been found sufficient to establish a speed limit and a speeding violation. For example, in *People v. Hampton*, 96 Ill. App. 3d 728, 730 (1981), a police officer's testimony that the defendant was traveling at a "high rate of speed," "over the speed limit of 30," and "probably 45 or so" was sufficient to establish that the defendant was speeding. Similarly, in *People v. Wydra*, 265 Ill. App. 3d 597, 599, 608 (1994), an officer's testimony estimating the defendant was traveling "15 to 20 m.p.h." over the posted speed limit while another officer activated a radar gun was sufficient to establish the defendant was speeding.

¶ 22    Unlike the officers in *Hampton* and *Wydra*, Trejo did not provide an estimate of defendant's speed or an explanation of how he determined that defendant was going over 65 miles per hour. While Trejo testified defendant was traveling "much faster than [Trejo] was," Trejo himself was traveling 10 miles under the 65 miles per hour maximum speed limit that he testified applied to the far-right lane. Defendant therefore could have been traveling "much faster" than Trejo and still have been within the allowable speed limit for both the far-right lane and the passing

lane. Further, the State presented no evidence regarding the speed limit in the lane to the left of Trejo, the lane in which defendant was driving when Trejo determined that defendant violated the speed limit in Trejo's lane. Nor did it present evidence that defendant maintained that rate of speed when he reentered the far-right lane.

¶ 23    We find Trejo's testimony, which was the only evidence presented at trial to establish the offense according to the agreed statement of facts, was insufficient to establish defendant was speeding in violation of section 11-601(b) of the Code. While section 11-601(b) does not mention an exact speed at which a defendant must be traveling to be found guilty, it does require the defendant to be traveling at a speed greater than the maximum speed limit. See 625 ILCS 5/11-601(b). Trejo's testimony did not establish defendant's actual or estimated speed at the time of the alleged violation. It solely established that defendant traveled faster than 55 miles per hour. Thus, we agree with defendant that, whether the maximum speed limit was 65 miles per hour or 70 miles per hour, the State's evidence was insufficient to prove defendant's speed was greater than the maximum speed limit at issue here.

¶ 24    We recognize that the trial court relied on defendant's video evidence to support its determination that defendant was guilty of speeding, finding it showed defendant passed Trejo "going pretty fast."[1] However, "[c]riminal convictions must rest on the strength of the State's case and not on the weakness of the defendant's." *People v. Poltrock*, 18 Ill. App. 3d 847, 850 (1974). "The function of choosing between two versions [of events] arises only when the State presents what would otherwise be an adequate case, and thus the trier of fact must determine whether the

---

[1] It appears from the agreed statement of facts that defendant presented the videos to demonstrate that Officer Trejo activated his emergency lights before defendant reached the exit ramp.

defense has adequately rebutted the State's presentation." *People v. Carroll*, 119 Ill. App. 2d 314, 321 (1970). That is not the case here, where the State's evidence is so unsatisfactory that it raises a reasonable doubt of defendant's guilt.

¶ 25   For the foregoing reasons, we reverse the judgment of the circuit court.

¶ 26   Reversed.